In re: R.W., Appellant,

v.

Michael SANDERS, et al., Respondents.

No. SC 85652.

Supreme Court of Missouri, En Banc.

Jan. 11, 2005.

John R. Cullom, Kansas City, MO, for Appellant.

Lisa Noel Gentleman, Kansas City, MO, for Respondents.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael Pritchett, Asst. Atty. Gen., Jefferson City, MO, Amicus Curiae.

RICHARD B. TEITELMAN, Judge.

R.W. filed a petition for declaratory judgment and injunctive relief to prevent enforcement of Missouri's sex offender registration statutes, section 589.400, et seq.[1] The circuit court denied relief. In this appeal, R.W. argues that the registration statute does not apply to offenders who receive a suspended imposition of sentence, conflicts with the section 610.105 requirement that records pertaining to a suspended imposition of sentence case shall be closed, and constitutes an invalid *ex post facto* law. The judgment is affirmed.

## BACKGROUND

All fifty states, the District of Columbia, and the federal government have adopted some form of sex offender registration and community notification statutes premised upon what is commonly referred to as "Megan's Law." *See,* Wayne A. Logan, *Liberty Interests in the Preventive State: Procedural Due Process and Sex Offender Community Notification Laws,* 89 J. Crim L. & Criminology 1167, 1171 (1999). Missouri codified its version of Megan's Law in sections 589.400 to 589.425. The statutes became effective on January 1, 1995, and require "[a]ny person who, since July 1, 1979, has been or is hereafter convicted of, been found guilty of, or pled guilty to committing, or attempting to commit, an offense of chapter 566" to register with the chief law enforcement officer of the county of the offender's residence. Section 589.400. Registrants are required to provide information to authorities, including their name, address, social security number, telephone number, place of employment, enrollment with any institution of higher learning, the date and place of conviction or plea, the age and gender of the victim at the time of the offense, fingerprints and a photograph. Section 589.407. The public may request from the county's chief law enforcement official the names, addresses and crimes for which offenders are registered. Section 589.417. If the victim was under 18 years of age, the offender must report in person to the county law enforcement agency every 90 days in order to verify the information provided. Section 589.414.4.

Registration is a lifetime requirement unless all offenses requiring registration are reversed, vacated, set aside or the offender is pardoned. Section 589.400.3. Failure to register is a class A misdemeanor, and any subsequent failure to register is a class D felony. Section 589.425.

On March 30, 1994, R.W. was charged with one count of sodomy and one count of

---

1. All statutory citations are to RSMo 2000 unless otherwise indicated.

sexual assault in the first degree. The conduct involved a minor. On February 9, 1995, after section 589.400 became effective, R.W. pleaded guilty to the sexual assault. The court suspended imposition of sentence, and R.W. was placed on probation for five years. As a condition of his probation, R.W. was required to register as a sex offender under section 589.400.

After R.W. completed his probation, he ceased registering as a sex offender. In April 2003, the Jackson County sheriff's office requested that R.W. register as sex offender and renew his registration every 90 days. R.W. declined to register.

R.W. filed a petition for declaratory judgment and injunctive relief to prevent enforcement of the registration statutes and the criminal penalties attending the failure to register. The circuit court denied relief. On appeal, R.W. argues, *inter alia*, that the sex offender registration statutes as applied to him are unconstitutional. He raises three points on appeal.

### ANALYSIS

█ The standard of review in a declaratory judgment case is the same as in any other court-tried case. *Levinson v. State*, 104 S.W.3d 409, 411 (Mo. banc 2003). The judgment will be affirmed unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 393 (Mo. banc 2001).

### I. Ex Post Facto

█ R.W. contends that the registration requirement, as applied to him, is an invalid *ex post facto* law because it constitutes a new penalty for a crime he committed before the registration requirements were enacted. In order to prevail on this claim, R.W. must overcome the presump-

tion that statutes are constitutional. *Westin Crown Plaza Hotel Co. v. King*, 664 S.W.2d 2, 5 (Mo. banc 1984). The registration statutes will be upheld unless they "clearly and undoubtedly" violate constitutional limitations. *In re Marriage of Kohring*, 999 S.W.2d 228, 231 (Mo. banc 1999). As the party raising the challenge, R.W. bears the burden of demonstrating that the statute is unconstitutional. *C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 327 (Mo. banc 2000).

█ The United States and Missouri constitutions both prohibit *ex post facto* laws. A constitutionally prohibited *ex post facto* law is one that "provides for punishment for an act that was not punishable when it was committed or that imposes an additional punishment to that in effect at the time the act was committed." *Cooper v. Mo. Bd. of Prob. & Parole*, 866 S.W.2d 135, 137–38 (Mo. banc 1993).

The registration statutes operate retrospectively in this case. R.W. committed the crime prior to the enactment of registration statutes and, because of the subsequent enactment of the statutes, is required to register as a sex offender. Accordingly, the issue is whether the registration requirements constitute a punishment.

█ A two-stage inquiry determines whether a retrospective statute constitutes an invalid *ex post facto* punishment or a valid, non-punitive civil regulation. If registration statutes were intended to establish a punishment, the inquiry ends and an *ex post facto* violation is established. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (holding that Alaska's sex offender registration statute is not an invalid *ex post facto* law because it is civil and non-punitive). If the registration statutes are intended to establish a non-punitive, civil regulatory system, the

inquiry proceeds to a determination of whether the registration statutes are sufficiently punitive in effect so as to negate the General Assembly's intent to enact a non-punitive civil sex offender registration program. *Id.*

■ The Missouri registration statutes do not clearly express the General Assembly's intent to make the registration statutes civil or criminal. There is evidence that the registration statutes were intended to be criminal and punitive insofar as the statutes are located in Title XXXVIII dealing with "Crimes and Punishment." However, "the location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Smith,* 538 U.S. at 94, 123 S.Ct. 1140, (quoting *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 365, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984)). Furthermore, this Court has previously stated that the "obvious legislative intent for enacting section 589.400 was to protect children from violence at the hands of sex offenders." *J.S. v. Beaird,* 28 S.W.3d 875, 876 (Mo.2000). When a statute is "an incident of the State's power to protect the health and safety of its citizens," it will be considered "as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." *Smith,* 538 U.S. at 93–94, 123 S.Ct. 1140 (quoting *Flemming v. Nestor,* 363 U.S. 603, 616, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). Given the lack of clear legislative intent, the registration statutes must be analyzed to determine if they are sufficiently punitive in effect to constitute a retrospective punishment.

■ In *Smith v. Doe,* the Court utilized five factors for assessing whether a statute constitutes a punishment under the *Ex Post Facto* Clause. The factors are whether the registration requirements: have been regarded in our history and traditions as punishment; promote the traditional aims of punishment; impose an affirmative disability or restraint; have a rational connection to a non-punitive purpose; or are excessive with respect to the purpose. *Id.* at 97, 123 S.Ct. 1140. The Court determined these factors indicated that the Alaska registration statute did not constitute a punishment. Essentially the same analysis leads to the same conclusion in this case: the Missouri registration statutes, as applied to R.W., do not constitute an invalid *ex post facto* law.

A. *Traditional notions of punishment*

The Missouri registration statutes are distinguishable from traditional notions of punishment. First, registration has not traditionally been viewed as punishment. *See, Lambert v. People of State of California,* 355 U.S. 225, 229, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (ordinance requiring felons to register was designed for the convenience of law enforcement). Registration is traditionally a government method of making available relevant and necessary information to law enforcement, not a method of punishment.

Second, unlike historical punishments such as stocks or contemporary punishments such as incarceration, the registration requirements do not physically confine or restrain the movement on a registrant. Moreover, the registrant is not intentionally subjected to public shaming or humiliation. The "dissemination of truthful information in furtherance of a legitimate governmental objective" is generally not regarded as punishment. *Smith,* 538 U.S. at 98, 123 S.Ct. 1140.

B. *Traditional aims of punishment*

Two traditional aims of punishment are deterrence of future crimes and retribution for past crimes. *Smith v. Doe,* 538

U.S. at 102, 123 S.Ct. 1140. Although the registration statutes may deter future crimes, the mere presence of a deterrent effect does not establish that registration constitutes a punishment because "any number of governmental programs might deter crime without imposing punishment." *Id.* Along with any deterrent effect, the registration statutes also serve the regulatory purpose of assisting authorities with investigation of sex crimes. The registration requirements are not retributive because all offenders are subject to lifetime registration. A retributive scheme would impose progressively longer registration periods based upon the severity of the underlying sex offense. While offenders such as R.W. who commit a sex offense against a minor have to update their registration more frequently, this is reasonably related to the regulatory objective of reducing recidivism and more efficiently investigating crimes against minors.

### C. *Affirmative disability or restraint*

The Missouri registration statutes require registrants to provide fingerprints, a photograph and written information concerning the offender and the underlying offense. However, the registrant is otherwise free to travel and go about his or her daily activities with no additional intrusion from governmental officials. Any restrictions on housing and employment are collateral consequences of the underlying sex offense, not the registration requirement.

### D. *Rational connection to a non-punitive purpose*

■ Whether a statute has a rational connection to a non-punitive purpose is a "most significant" factor in the *ex post facto* analysis. *Smith v. Doe,* at 102, 123 S.Ct. 1140, (quoting *United States v. Ursery,* 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)). The registration requirement advances the legitimate, non-punitive purpose of public safety and protecting children from sex offenders. *J.S. v. Beaird,* 28 S.W.3d 875, 876 (Mo.2000).

### E. *Excessiveness with respect to the purpose*

The registration statutes are not excessive in relation to the regulatory purposes. As applied to those who, as did R.W., commit sex offenses against a minor, the registration requirement is not excessive given the assistance it provides law enforcement agencies in investigating future offenses. Furthermore, as noted above, the registration requirements do not impose substantial physical or legal impediments upon a registrant's ability to conduct his or her daily affairs.

While the registration statutes have both punitive and regulatory attributes, a weighing of the factors above leads to the conclusion that the thrust of the registration and notification requirements are civil and regulatory in nature. R.W. has not carried his burden of "clearly and undoubtedly" showing that the registration statutes violate constitutional limitations on *ex post facto* laws.[2]

---

**2.** Other state courts rejecting *ex post facto* challenges to state sex offender registration statutes include: *Robinson v. State,* 730 So.2d 252 (Ala.Crim.App.1998)(registration and notification requirements are not punishment); *State v. Noble,* 171 Ariz. 171, 829 P.2d 1217 (1992); *Kellar v. Fayetteville Police Dept.,* 339 Ark. 274, 5 S.W.3d 402 (1999); *People v. Castellanos,* 21 Cal.4th 785, 88 Cal.Rptr.2d 346, 982 P.2d 211 (1999); *People v. Stead,* 66 P.3d 117 (Colo.App.2003)(internet posting of information from sex offender registry did not constitute additional punishment); *Helman v. State,* 784 A.2d 1058 (Del.2001); *Ray v. State,* 133 Idaho 96, 982 P.2d 931 (1999); *People v. Malchow,* 193 Ill.2d 413, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000); *Spencer v. O'Connor,* 707 N.E.2d 1039 (Ind.Ct.App.1999); State v. Pickens, 558 N.W.2d 396 (Iowa 1997); *Hyatt v. Commonwealth,* 72 S.W.3d 566 (Ky.2002);

## II. *Statutory Construction*

R.W. sets forth two statutory construction challenges to the requirement that he register as a sex offender.

■ First, he argues that the registration statutes do not provide for registration of convicted sex offenders who receive a suspended imposition of sentence. While section 589.400(1) does not expressly provide for registration for offenders receiving a suspended imposition of sentence, it also provides no exemption. The statute obligates all persons "convicted of, been found guilty of or pled guilty to committing" an enumerated sex offense to register as a sex offender. R.W. does not dispute that he pled guilty to a sex offense. R.W. is, therefore, required to register.

■ Second, R.W. argues that the registration statutes conflict with section 610.105,[3] which closes all official records regarding cases in which imposition of sentence is suspended. The registration statutes do not require the records of a court proceeding to be opened and, therefore, do not conflict with section 610.105. The registration statutes require only that R.W. register with the county sheriff by providing the information required by statute to be maintained on the registry. The registration requirements in no way permit public access to the official arrest, court and conviction records made confidential by section 610.105.

## III. *Due Process*

■ R.W. argues that the registration requirements violate his fundamental due process rights to liberty and privacy. In *Connecticut Dept. of Public Safety et al., v. Doe,* the United States Supreme Court held that Connecticut's sex offender registration statute did not violate the due process rights of registrants. 538 U.S. 1, 7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). Because the ultimate fact determining whether a person had to register was conviction of sex crime, the Court found that the criminal procedures leading to conviction provided the registrant with a sufficient procedurally safeguarded opportunity to challenge the conviction that triggered the registration requirement. *Id.*

The analysis in *Connecticut v. Doe* controls this case. R.W. was charged with a sex offense and pled guilty. He was notified of his legal obligation to register at

*Opinion of the Justices of the Senate,* 423 Mass. 1201, 668 N.E.2d 738 (1996); *State v. Haskell,* 784 A.2d 4 (Me.2001); *People v. Pennington,* 240 Mich.App. 188, 610 N.W.2d 608 (2000); *State v. Manning,* 532 N.W.2d 244 (Minn.App.1995); *State v. Mount,* 317 Mont. 481, 78 P.3d 829 (2003); *State v. Torres,* 254 Neb. 91, 574 N.W.2d 153 (1998); *State v. Costello,* 138 N.H. 587, 643 A.2d 531 (1994); *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995); *State v. Druktenis,* 135 N.M. 223, 86 P.3d 1050 (Ct.App.2004); *People v. Grice,* 254 A.D.2d 710, 679 N.Y.S.2d 771 (1998); *State v. Sakobie,* 598 S.E.2d 615 (N.C.App.2004); *State v. Burr,* 598 N.W.2d 147 (N.D.1999); *State v. Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570 (1998); *State v. MacNab,* 334 Or. 469, 51 P.3d 1249 (2002); *Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616 (1999); *State v. Walls,* 348 S.C. 26, 558 S.E.2d 524 (2002); *Meinders v. Weber,* 604 N.W.2d 248 (S.D.

2000); *White v. State,* 988 S.W.2d 277 (Tex. App.1999); *Kitze v. Commonwealth,* 23 Va. App. 213, 475 S.E.2d 830 (1996); *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062 (1994); *Hensler v. Cross,* 210 W.Va. 530, 558 S.E.2d 330 (2001); *Snyder v. State,* 912 P.2d 1127 (Wyo.1996).

3. Section 610.105 reads, in pertinent part: "If the person arrested is charged but the case is subsequently nolle prossed, dismissed, or the accused is found not guilty or imposition of sentence is suspended in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records when such case is finally terminated except that the disposition portion of the record may be accessed and except as provided in section 610.120."

the time of his plea and received all procedural safeguards attending a guilty plea. No further process was necessary.

The judgment is affirmed.

All concur.