Richard G. RAMSEY, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 85216.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 13, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 19, 2006.

Application for Transfer Denied Feb. 28, 2006.

Deborah Daniels, Richard Starnes (co-counsel), Jefferson City, MO, for respondent.

Edward Thompson, St. Louis, MO, for appellant.

## OPINION

GLENN A. NORTON, Chief Judge.

Richard G. Ramsey appeals the judgment denying his motion for post-conviction relief under Rule 24.035 [1] without an evidentiary hearing. We affirm.

---

1. All references to rules are to the Missouri Supreme Court Rules (2005).

## I. BACKGROUND

Ramsey was charged with three counts of statutory sodomy in the first degree, three counts of incest, two counts of sexual misconduct in the first degree and twenty-five counts of child pornography. He pled guilty to all charges. During the plea hearing, the court asked several questions to determine whether Ramsey's plea was voluntary and intelligent and whether his counsel provided him with effective assistance. Ramsey responded that he told counsel everything about his case and that counsel advised him of all of his legal rights and all of his possible defenses to the charges. He also stated that he was satisfied with his counsel, that no one threatened, intimidated, or forced him to plead guilty against his will and that he was pleading guilty voluntarily and of his own free will. He further stated that he believed he was better off pleading guilty than going to trial. The court accepted Ramsey's guilty plea.

Ramsey then filed a *pro se* motion for post-conviction relief pursuant to Rule 24.035, alleging that counsel was ineffective for failing to move to suppress statements Ramsey made to the police and evidence obtained from his home. Ramsey claimed that through threats, intimidation and his total reliance on the expected expert and professional behavior of his counsel, the State was able to obtain a conviction that was otherwise unobtainable. In the amended motion filed by appointed appellate counsel, Ramsey added that plea counsel was ineffective in failing to inform him that once convicted he was required to register as a sex offender.

The motion court denied these claims without an evidentiary hearing.[2] In its findings and conclusions, the court deter-

mined that the record conclusively refuted Ramsey's claim regarding the motion to suppress and that the registration requirement was a collateral consequence of his plea and could not form the basis of post-conviction relief. This appeal follows.

## II. DISCUSSION

We review the denial of a post-conviction motion under Rule 24.035 to determine whether the motion court's findings of fact and conclusions of law were clearly erroneous. *Weeks v. State,* 140 S.W.3d 39, 44 (Mo. banc 2004). The motion court's findings and conclusions will be deemed clearly erroneous only if, after reviewing the record, this Court is left with the definite and firm impression that a mistake has been made. *Id.*

### A. Failure to File Motion to Suppress

In his first and second points, Ramsey argues that counsel was ineffective in failing to advise him that his statement to police was coerced and that evidence seized from his home was illegally obtained. He contends that a competent attorney in similar circumstances would have advised him that the statement and the evidence could be suppressed and would have pursued a motion to suppress. Ramsey argues that because counsel failed to investigate the conditions under which his statement was made and the circumstances surrounding the search of his home, he believed he had no other option but to plead guilty.

A claim that counsel was ineffective for failing to file and pursue a motion to suppress is waived by the voluntary entry of a guilty plea. *Steinle v. State,* 861 S.W.2d 141, 144 (Mo.App. W.D.1993). In

---

**2.** The court granted Ramsey's other claims regarding the insufficient factual basis for the    incest charges.

fact, a guilty plea renders a claim of ineffective assistance of counsel irrelevant except to the extent that is affects the voluntariness and understanding with which the movant made his plea. *Simmons v. State,* 100 S.W.3d 143, 146 (Mo.App. E.D.2003). A plea must not only be a voluntary expression of the defendant's choice, it must also be a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act. *State v. Hunter,* 840 S.W.2d 850, 861 (Mo. banc 1992). Thus, if the record conclusively showed that Ramsey was aware that he could move to suppress his statement to police or the evidence obtained in the search of his home, understood that by entering a plea of guilty he waived the right to file that motion and voluntarily entered a plea of guilty to the charges, then his claim was properly denied without an evidentiary hearing. *See Steinle,* 861 S.W.2d at 144; *see also Simmons,* 100 S.W.3d at 145 (movant only entitled to an evidentiary hearing if alleged facts warranting relief, which were not refuted by the record.)

Ramsey argues that the court's inquiries at the plea hearing regarding counsel's performance were too general and "bland" to conclusively refute his claim that he did not understand that he could move to suppress his statement or the evidence obtained from his home. While general inquiries about counsel's performance may not be sufficient to refute the record in some circumstances, where the movant's own allegations clearly refute the ineffective assistance claim, an evidentiary hearing is not required regardless of the broad scope of the plea court's questions. *See Morrison v. State,* 65 S.W.3d 561 (Mo.App. W.D.2002).

In *Morrison,* the movant claimed that counsel was ineffective because he disregarded the movant's requests for investigation and failed to prepare for trial. *Id.* at 563. The court agreed that the questions at the plea hearing were too broad to conclusively refute the ineffective assistance of counsel claims. *Id.* at 564. But the court noted that because the movant specifically alleged that he was aware his counsel had not contacted his co-defendants or asked that certain evidence be tested prior to his plea hearing, the record refuted his claims notwithstanding the broad questions. *Id.* at 564–65. Those circumstances distinguished the case from *Buckner v. State,* where the record did not show that the movant possessed knowledge of his counsel's failures at the time he entered his plea. *Id.* (citing 995 S.W.2d 47, 49–50 (Mo.App. W.D.1999)). Thus, because the movant could have raised questions about his counsel's performance at the plea hearing, yet repeatedly expressed satisfaction with his counsel to the court and denied that he had been coerced to plead guilty, the motion court did not clearly err in denying his motion for postconviction relief. *Id.* at 565.

Like the movant in *Morrison,* Ramsey specifically alleged in his *pro se* motion that he communicated with his plea counsel regarding his statement to the police and the seized evidence:

> ... [Counsel] was notified, in writing about the illegal arrest, in April 2000 and did nothing;
>
> ... [Counsel] was notified, by phone, about possible police misconduct during the questions of [Ramsey], in January 2000 and did nothing;
>
> ... [Counsel] was notified, in writing about possible police misconduct during the questioning of [Ramsey], in April 2000 and did nothing;
>
> ...
>
> During the entire proceeding every affirmative action [Ramsey] wanted to take was countered by [his counsel].

When the evidenciary [sic] hearing [before his plea] was scheduled [his counsel] insisted that it be waived because the state had threatened additional charges if we (the defense) insisted on the hearing. It is [Ramsey's] contention that no conviction would have been obtained if this hearing had been held since the "confession" was illegally obtained and all potential physical evidence was tainted by illegal searches and seizures and would have been suppressed.

The foregoing shows that Ramsey clearly was aware of the issues he claims his counsel failed to pursue prior to the plea hearing. Thus, like the movant in *Morrison*, Ramsey had ample opportunity to discuss his concerns about counsel during the plea hearing, yet repeatedly expressed his satisfaction with counsel's performance. Accordingly, Ramsey's claims are conclusively refuted by the record, and the court did not clearly err by denying those claims without an evidentiary hearing. Points I and II are denied.

### B. Consequences of Plea

■ In his third point, Ramsey argues that he was denied effective assistance of counsel because counsel failed to advise him of section 589.400 RSMo 2000,[3] the Missouri law requiring him to register as a sex offender. According to Ramsey, had counsel informed him of that law, he would not have pled guilty and would have insisted on a trial.

■ The trial court and counsel have a duty to inform the defendant of the direct consequences of pleading guilty, but not the collateral consequences. *Huth v. State*, 976 S.W.2d 514, 516 (Mo.App. E.D. 1998). Failure of counsel to inform a movant of all the collateral consequences of his

guilty plea is not a sufficient basis for an ineffective assistance claim. *Id.* at 517. Direct consequences are those which definitely, immediately and largely automatically follow the entry of a plea of guilty. *Id.* at 516–17. The question is whether the movant knew of and understood the consequences of his plea. *Id.* at 517.

Relying on cases from other jurisdictions, the motion court found that registration as a sex offender is a collateral consequence of a guilty plea. *See Peterson v. State*, 988 P.2d 109, 115 (Alaska Ct.App. 1999); *People v. Montaine*, 7 P.3d 1065, 1067 (Colo.Ct.App.1999); *Ray v. State*, 133 Idaho 96, 982 P.2d 931, 936 (Id.1999). Ramsey argues that, notwithstanding the cases the motion court cites, other jurisdictions either judicially or legislatively require pre-plea advisement in all cases where sex offender registration may be required, which he argues effectively means that consequence is direct. *See, e.g., State v. Breiner*, 562 N.W.2d 565, 567–68 (N.D.1997) (finding that the registration requirement imposes grave, and even onerous, additional punishment and that the North Dakota legislature clearly imposed a duty on the court to inform a pleading defendant about that requirement); *but see State v. Burr*, 598 N.W.2d 147, 157, 158–59 (N.D.1999) (holding that the North Dakota registration statute is regulatory and does not violate the *ex post facto* clause and overruling *Breiner* to the extent it found the statute punitive).

Although we have found no Missouri case addressing the specific issue of whether registration as a sex offender is a direct or collateral consequence of a guilty plea, we find a Missouri Supreme Court case discussing the nature of registration instructive.[4]

---

3. All statutory references are to RSMo 2000.

4. The State also cites to *State v. Larson,* in which the Court addressed whether a defen-

In *In re R.W.*, the plaintiff sought a declaratory judgment and injunctive relief to prevent enforcement of Missouri's sex offender registration statutes on the basis that, among other reasons, the imposition of the registration requirement on offenders who receive a suspended imposition of sentence constitutes an invalid *ex post facto* law. 168 S.W.3d 65, 67 (Mo. banc 2005). The Court stated that Missouri registration statutes do not clearly express the General Assembly's intent to make the registration statutes civil or criminal. *Id.* at 69. The Court then stated that, while there is evidence that the registration statutes were intended to be criminal and punitive insofar as they are located under the title dealing with "Crimes and Punishment," because the statutes are an incident of the State's power to protect the health and safety of its citizens, the statutes "evidenc[e] an intent to exercise the State's regulatory power, and not a purpose to add to the punishment." *Id.*

To determine whether the registration statutes were nevertheless sufficiently punitive in effect to constitute retroactive punishment, the Court considered several factors, including whether registration requirements historically have been regarded as punishment, whether they promote the traditional aims of punishment, whether they have a rational connection to a non-punitive purpose, or whether they are excessive with respect to that purpose. *Id.* at 69–70. The Court concluded that registration is a method of making available relevant and necessary information to law enforcement, rather than a method of punishment. *Id.* at 69. Although registration statutes may deter future crimes, the mere presence of a deterrent effect does not establish that registration constitutes a punishment because any number of governmental programs might deter crime without imposing punishment. *Id.* at 70. In addition, the Court stated that the registration statutes also serve the regulatory purpose of assisting authorities with investigation of sex crimes. *Id.* The Court found that the registration requirement advances the legitimate, non-punitive purpose of public safety and protecting children from sex offenders and that the registration statutes were not excessive in relation to the regulatory purposes. *Id.* at 70. The Court rejected the plaintiff's *ex post facto* challenge and held that, while the registration statutes have both punitive and regulatory attributes, on balance the thrust of the registration and notification requirements are civil and regulatory in nature. *Id.*

Although *R.W.* did not address the precise issue presented in this case, the Court's analysis of the registration statutes as civil and regulatory in nature leads us to agree with those jurisdictions that have held that registration as a sex offender is a collateral, rather than a direct, consequence of a guilty plea. Specifically, in *State v. Ward,* cited by our Supreme Court in *R.W.,* the Washington Supreme Court referred to its analysis of whether a registration requirement violated the *ex post facto* clause when deciding whether the requirement was a direct or collateral consequence of pleading guilty: "[a]s we concluded under our *ex post facto* analysis, registration as a sex offender does not

---

dant would suffer irreparable harm absent a writ of prohibition requiring the trial court to allow him to withdraw his plea. 79 S.W.3d 891, 894 (Mo. banc 2002). The Court explained that even though imposition of the defendant's sentence was suspended, he nonetheless was subject to a number of "punitive,

collateral consequences," specifically including that he must register as a sex offender. *Id.* Given the limited context in which the Court described registration as "collateral," we decline to rely on that statement in our analysis.

alter the standard of punishment." 123 Wash.2d 488, 869 P.2d 1062, 1076 (1994). The court further found that registration was not a direct consequence because it does not enhance a defendant's sentence or punishment. *Id.*

Similarly, because *R.W.* held that sex offender registration is more regulatory than punitive, we hold that the registration requirement is a collateral consequence of a guilty plea. Although registration definitely, immediately and largely automatically follows the entry of a guilty plea in this case, because it is not punitive, it does not enhance Ramsey's sentence or affect the range of his punishment. As the Western District observed in *Weston v. State,* the test for determining whether a consequence is direct or collateral was derived from an Eighth Circuit case that concluded that " '[t]he distinction between "direct" and "collateral" consequences of a plea ... turns on whether the result represents a definite, immediate and largely automatic effect on the *range of punishment.*' " 2 S.W.3d 111, 116 n. 1 (Mo.App. W.D.1999) (quoting *George v. Black,* 732 F.2d 108, 110 (8th Cir.1984)) (emphasis added). Under this more restrictive standard focusing on the range of punishment and not solely on any effect following a guilty plea, the registration requirement is collateral because it is not punishment. While we do not intend to otherwise restrict the standard for whether a consequence is direct or collateral, we find that the more restrictive standard should apply where, as here, the consequence is non-punitive and regulatory.[5]

The motion court did not clearly err in denying Ramsey's claim based on counsel's failure to inform him of his duty to register. Point III is denied.

### III. CONCLUSION

The judgment is affirmed.

LAWRENCE E. MOONEY, J. and BOOKER T. SHAW, J., concurring.

---

**5.** This Court is aware that, under the registration statute, courts are required to inform sex offenders being released from confinement, released on probation, or discharged from a fine of their possible duty to register. *See* section 589.405; *see also* section 589.403 (imposing same requirement on correctional facilities and mental health institutions). That notice requirement does not, however, impact the analysis of whether registration is a direct or collateral consequence of a guilty plea or change our conclusion that because it is primarily regulatory under *R.W.,* registration is not a direct consequence about which a defendant must be notified prior to his plea. Had our legislature also mandated pre-plea advisement, as other state legislatures have, that analysis might be affected and the conclusion might be different. Whether such pre-plea advisement should be incorporated in Supreme Court Rules is obviously a matter for the Supreme Court's deliberation.