

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| JOHN DOE, | ) | *Opinion issued August 13, 2024* |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC100296 |
| | ) | |
| ERIC T. OLSON, et al., | ) | |
| | ) | |
| Respondents. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable David L. Vincent III, Judge

John Doe appeals the circuit court's judgment finding the registration requirements of the Missouri Sex Offender Registry Act (MO-SORA) do not violate Doe's substantive due process rights or the prohibition on *ex post facto* laws. Because Doe has no fundamental right to privacy in the information the registry requires him to disclose and the registry is rationally related to the legitimate state interest of protecting children, the registry does not violate Doe's substantive due process rights. Because the registration requirements are civil in nature, the registry does not violate the prohibition on *ex post facto* law. This Court affirms the circuit court's judgment.

**Factual and Procedural Background**

In 1997, Doe pleaded guilty to two class C felonies, deviate sexual assault in the first degree, section 566.070, RSMo 1978, and sexual assault in the first degree, section 566.040, RSMo 1978. The circuit court suspended Doe's sentence and placed him on probation for five years, and Doe registered as a sex offender pursuant to MO-SORA.

In 2002, Doe completed his probation requirements, and the circuit court sealed Doe's criminal case records pursuant to section 610.105, RSMo Supp. 2001, which closed his official case records because imposition of sentence was suspended and the case was finally terminated. Doe has remained on the sex offender registry since his guilty plea.

After Doe's guilty plea, the legislature amended MO-SORA several times. These amendments:

- Allow members of the public to request names, addresses, and crimes for registrants, section 589.417.2, RSMo Supp. 1999;

- Require individuals who have registered federally to register in Missouri, section 589.400.1(5), RSMo 2000;

- Publish registry information on the internet, section 589.402.1, RSMo Supp. 2005;

- Increase the information listed about registrants, section 589.402.3, RSMo Supp. 2006.

- Require in-person reporting of changes to name, residence, employment status, and student status, section 589.414.1, RSMo Supp. 2008;

- Direct registrants to report in person to disclose changes to online identifiers such as e-mail address and internet communication names, section 589.414.6, RSMo Supp. 2008;

- Require registrants provide a DNA sample, section 589.407.1(3), RSMo Supp. 2008;

- Reclassify crimes into Tier I, II and III offenses, section 589.414, RSMo Supp. 2018;

- Allow removal from the registry for some Tier I and II registrants, section 589.400, RSMo Supp. 2018; and

- Require Tier III registrants to report in person every 90 days and be photographed, section 589.407.1(3)(a), RSMo Supp. 2018.

In addition to these changes to registration requirements in Missouri, Congress enacted the federal Sex Offender Registration and Notification Act ("SORNA") in 2006. 34 U.S.C. secs. 20901-20962. SORNA places registrants into one of three categories based on the seriousness of their offenses. Doe's offenses fall into Tier II under SORNA. 34 U.S.C. sec. 20911(3); 18 U.S.C. sec. 2243. SORNA allows Tier II offenders to seek removal from the federal registry after 25 years. 34 U.S.C. sec. 20915(a)(2).

After Congress enacted SORNA, the Missouri legislature also categorized offenses triggering registration under MO-SORA into three tiers, from least to most serious. Section 589.414, RSMo Supp. 2018. Under MO-SORA, Doe's crimes fit into the Tier III category,[1] which includes the most serious offenses and requires lifetime registration. *Id.*; section 589.400.4(3), RSMo Supp. 2018.

---

[1] The offenses Doe pleaded guilty to were transferred to different sections and renamed in 2013. Deviate sexual assault, section 566.070, RSMo 1978, was transferred to section 566.061, RSMo Supp. 2013, and captioned as sodomy in the second degree. Sexual assault, section 566.040, RSMo 1978, was transferred to section 566.031, RSMo Supp. 2013, and captioned as rape in the second degree. Doe's convictions for sodomy in the second degree and rape in the second degree both qualify him as a Tier III offender pursuant to section 589.414.7(b),(h), RSMo Supp. 2018.

In 2022, Doe filed his third amended petition for declaratory and injunctive relief against the St. Louis County Sheriff and the Missouri Highway Patrol Superintendent seeking removal from the registry. Doe claimed the amendments to MO-SORA after his plea required him to disclose information from his sealed record, which infringes on his rights to privacy and substantive due process in violation of the Fourteenth Amendment to the United States Constitution and article I, section 10 of the Missouri Constitution. Doe also claimed the amendments render MO-SORA a punitive *ex post facto* law in violation of the Fourteenth Amendment and article I, section 9 of the United States Constitution and article I, section 13 of the Missouri Constitution.

The circuit court entered judgment against Doe on all claims. Doe appeals.[2] Because no fundamental right is implicated, the registry is rationally related to a legitimate state interest, and, because the registry is civil in nature, this Court affirms.

## Standard of Review

"Construction of a statute is a question of law, which this Court reviews *de novo*." *Doe v. Phillips*, 194 S.W.3d 833, 841 (Mo. banc 2006). "A 'statute is presumed to be valid and will not be declared unconstitutional unless it clearly contravenes some

---

[2] The Missouri Highway Patrol Superintendent pointed out several deficiencies with Doe's briefing. "Although this Court prefers to reach the merits of a case, excusing technical deficiencies in a brief, it will not consider a brief so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (internal quotation omitted). Doe's brief, while not compliant with Rule 84.04, was sufficient to give notice to this Court and the parties. This Court encourages Doe to carefully review Rule 84.04.

constitutional provision.'" *Id*. (quoting *Doe v. Roman Catholic Diocese of Jefferson City,* 862 S.W.2d 338, 340 (Mo. banc 1993)).

## Analysis

### *Point I - Due Process*

Doe argues MO-SORA's registration requirements violate his substantive due process rights by infringing on his fundamental right to privacy. The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law…." U.S. Const. amend. XIV, § 1. "Missouri courts have construed Missouri's due process clause, article I, section 10, to be congruent with the Fourteenth Amendment's guarantees." *Bromwell v. Nixon*, 361 S.W.3d 393, 400 (Mo. banc 2012).

To address Doe's due process claim, this Court must first determine whether MO-SORA's registration requirements implicate a fundamental right. If the requirements implicate a fundamental right, the state must show a compelling governmental interest for interfering with that right. *State v. Clay*, 481 S.W.3d 531, 535 (Mo. banc 2016). If the statute does not implicate a fundamental right, the statute will pass scrutiny so long as it is "rationally related to a legitimate state interest." *Phillips*, 194 S.W.3d at 844-45 (internal quotation omitted).

*Fundamental Right*

Doe argues he has a fundamental right to privacy in information MO-SORA requires him to disclose because the records relating to his criminal case were sealed by the circuit court pursuant to section 610.105, RSMo Supp. 2001. This Court previously

5

addressed a similar due process challenge to the registry in *Phillips*, 194 S.W.3d. at 844-45.  While this Court generally acknowledged "[t]he right to privacy is fundamental," *id*. at 844 n.9, it ultimately found that the petitioning sex offenders, whose records had not been sealed, had no fundamental right to privacy in information already in the public domain, *id*. at 845.

In an earlier case involving sealed records, a group of sex offenders brought a statutory construction challenge to the registration statues, arguing the registration requirements conflicted with section 610.105, RSMo Supp. 2001, by requiring sealed records be made open.  *R.W. v. Sanders*, 168 S.W.3d 65, 71 (Mo. banc 2005). This Court found "[t]he registration statutes do not require the records of a court proceeding to be opened and, therefore, do not conflict with section 610.105." *Id*.  "The registration statutes require only that [an offender] register with the county sheriff by providing the information required by statute to be maintained on the registry." *Id*.

Here, instead of advancing a statutory construction challenge to the registry as in *Sanders*, Doe makes a substantive due process challenge, which he ties to the records sealed pursuant to section 610.105, RSMo Supp. 2001.   Doe argues that, unlike the sex offenders in *Phillips*, his record was actually sealed and, because section 610.105, RSMo Supp. 2001, seals the records of his convictions,[3] he has a fundamental privacy interest in the information in the records.

---

[3] While official records pertaining to the case may not be available to the general public, the judgment, order, or final action taken the by the prosecutor may be accessed. Section 610.105, RSMo Supp. 2001.  Even the closed records are available to a variety of entities for various purposes pursuant to section 610.120, RSMo Supp. 2021. While this Court will

6

To evaluate Doe's privacy right claim, this Court may turn to cases from the federal circuits, which are not binding but can be considered in undertaking an independent analysis. *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995). The Eighth Circuit held a defendant who pleaded guilty to a crime and has the criminal record expunged has no privacy right in the details of the guilty plea. *Eagle v. Morgan*, 88 F.3d 620, 627 (8th Cir. 1996). The Eighth Circuit noted the "protection against public dissemination of information is limited and extends only to highly personal matters representing the most intimate aspects of human affairs." *Id.* at 625 (internal quotation omitted). "By freely admitting his transgression in an intrinsically public forum, [the defendant] acknowledged before all his fellow citizens that he had committed a crime ... He cannot now claim that a subsequent disclosure of this same information constituted a constitutional violation." *Id.* at 626. The details of guilty pleas are not private information and "are by their very nature matters within the public domain." *Id*. at 625. The reasoning of the Eighth Circuit is persuasive.

Doe freely admitted his guilt in open court, and the information contained in the record was public for five years prior to being sealed. Sealing the record does not prevent any information related to the convictions from remaining in the public domain. The circuit court sealing the records does not "nullify the historical fact that … [Doe] pleaded guilty to a felony." *Id.* at 626-27. Doe has no fundamental right to privacy in the

---

address the merits of Doe's argument, the openness of the final judgment and the availability of the sealed record for a variety of uses weigh towards the lack of privacy in the information.

7

information contained in the sealed records. Finding that no fundamental right was implicated, this Court must now determine whether MO-SORA withstands rational basis review.

*Rational Basis Review*

Because Doe fails to show a fundamental right is implemented, MO-SORA will withstand scrutiny so long as it is "rationally related to a legitimate state interest." *Phillips*, 194 S.W.3d at 844-45 (internal quotation omitted). A statute will withstand rational basis review "if any set of facts can be reasonably conceived to justify it." *Mo. Prosecuting Att'ys & Cir. Att'ys Ret. Sys. v. Pemiscot Cnty.*, 256 S.W.3d 98, 102-03 (Mo. banc 2008).

This Court previously found MO-SORA is rationally related to a legitimate state interest, holding the state "has a legitimate interest in disseminating public information in the interest of safety and law enforcement efforts" and the safety of children. *Phillips*, 194 S.W.3d at 845. MO-SORA is rationally related to the interest of disseminating information because notification makes "convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant." *Id.* (quoting *Smith v. Doe*, 538 U.S. 84, 99, 101 (2003)). MO-SORA is rationally related to the safety of children because "the purpose of [MO-SORA] is to protect children from violence at the hands of sex offenders." *Id.* (internal quotation omitted).

Doe argues *Phillips* is not controlling because MO-SORA requires him to register for life even though he has no risk of recidivism.[4] Doe contends requiring lifetime registration from offenders who are unlikely to reoffend results in frustration of the state's interests because it dilutes the registry by placing those who pose a high danger of recidivism in the same pool as those who pose a low danger of recidivism.

While some registrants may not pose a high risk of reoffending, the legislature may make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103. The legislature's categorical judgment is supported because "[t]here is evidence that recidivism rates among sex offenders are higher than the average for other types of criminals." *United States v. Kebodeaux*, 570 U.S. 387, 395 (2013). The legislature made several categorical judgments based on the risk of recidivism. MO-SORA requires lifetime registration from Tier I, II, and III offenders who have previously registered under SORNA. *Smith v. St. Louis Cnty. Police*, 659 S.W.3d 895, 904 (Mo. banc 2023). But offenders in Tier I and II may seek removal if they have not previously registered pursuant to SORNA. The legislature also included some categorical exemptions, including one for Romeo and Juliet offenses. *See* section 589.400.9(1)(b), RSMo Supp. 2018; 34 U.S.C. sec. 20911(5)(C).

---

[4] The circuit court's judgment did not specifically find Doe had a low danger of recidivism. The circuit court stated, "As to dangerousness, … the Court finds that Mr. Doe has been a hard working law abiding citizen with a good reputation in his community since his plea of guilty in 1997, except for the felony arrests for failure to register."

The legislature made a reasonable categorical judgment that requiring sex offenders to register advances the state interest of reducing the risk of harm to children.[5] While the current requirements of MO-SORA may result in the inclusion of offenders who may be unlikely to reoffend, MO-SORA is still reasonably related to the interest in protecting the public. *See Gunderson v. Hvass*, 339 F.3d 639, 645 (8th Cir. 2003) (holding that requiring those who were charged with predatory sexual offenses but pleaded guilty to non-predatory offenses to register was rationally related to the State's interest even though some persons who are not predators may be included in the registry). The reporting and registration requirements are consistent with the objective of promoting public safety. This Court finds MO-SORA is rationally related to the legitimate state interest of protecting children. Doe's first claim is denied. This Court now turns to evaluating Doe's remaining claim.

### Point II – Ex Post Facto

Doe next claims MO-SORA violates the constitutional prohibition on *ex post facto* laws. "The United States and Missouri constitutions both prohibit *ex post facto* laws." *Sanders*, 168 S.W.3d at 68. "A constitutionally prohibited *ex post facto* law is one that provides for punishment for an act that was not punishable when it was committed or that imposes an additional punishment to that in effect at the time the act was committed." *Id.* (internal quotation omitted). The Missouri Constitution's prohibition on *ex post facto*

---

[5] Doe's unlikelihood to reoffend supports the conclusion the registry helps prevent recidivism.

laws applies to criminal, and not civil, statutes. *State v. Honeycutt*, 421 S.W.3d 410, 424-26 (Mo. banc 2013).

It is Doe's burden to show the law is unconstitutional. *Sanders*, 168 S.W.3d at 68. "The registration statutes will be upheld unless they 'clearly and undoubtedly' violate constitutional limitations." *Id*. (internal quotation omitted).

"A two-stage inquiry determines whether a retrospective statute constitutes an invalid *ex post facto* punishment or a valid, non-punitive civil regulation." *Id*. The first stage of the inquiry examines the intent of the statute. "If registration statutes were intended to establish a punishment, the inquiry ends and an *ex post facto* violation is established." *Id.* "If the registration statutes are intended to establish a non-punitive, civil regulatory system, the inquiry proceeds to a determination of whether the registration statutes are sufficiently punitive in effect so as to negate the General Assembly's intent to enact a non-punitive civil sex offender registration program." *Id*. at 68-69. During the second stage of the inquiry, to determine whether MO-SORA is civil or punitive in nature, this Court must analyze five factors. *Id*. at 69. "The factors are whether the registration requirements: have been regarded in our history and traditions as punishment; promote the traditional aims of punishment; impose an affirmative disability or restraint; have a rational connection to a non-punitive purpose; or are excessive with respect to the purpose." *Id*.

This Court previously undertook this two-stage inquiry in *Sanders*. In conducting the first stage of the inquiry, this Court held the petitioner did not establish the registration statutes were a punishment because "[t]he Missouri registration statutes do

11

not clearly express the General Assembly's intent to make the registration statutes civil or criminal." *Id.* Moving to analysis of the five factors as part of the second stage of the inquiry, this Court found MO-SORA did not violate the prohibition on *ex post facto* laws because "a weighing of the factors … leads to the conclusion that the thrust of the registration and notification requirements are civil and regulatory in nature." *Id.* at 70.

Here, Doe alleges amendments made to MO-SORA after this Court's holding in *Sanders* have substantially changed the registration requirements, rendering MO-SORA punitive in violation on the prohibition against *ex post facto* law. Doe takes issue with the following changes: redefining the classification of offenses, requiring Tier III offenders to register for life, mandating 90-day reporting, requiring reporting in person to disclose any change in registration information, mandating offenders provide a DNA sample, adding requirements to the information offenders must disclose, and publishing more information about offenders online. Given the legislature's intent has not changed since *Sanders*, this Court turns to balancing the five factors in the second stage of the inquiry to determine whether the registry is ultimately civil or punitive in effect.

1. *Traditional notions of punishment*

This Court must first determine whether MO-SORA's requirements are similar to traditional forms of punishment. Doe contends two of the amendments to MO-SORA are akin to traditional forms of punishment. He asserts the requirement to publish registry information on the internet is akin to public shaming and the extensive reporting requirements are similar to probation.

12

Doe's argument that internet publication is akin to public shaming fails because "[t]he 'dissemination of truthful information in furtherance of a legitimate governmental objective' is generally not regarded as punishment." *Id*. at 69 (quoting *Smith*, 538 U.S. at 98). The United States Supreme Court found internet publication of registry information did not render Alaska's registry punitive because "[w]idespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Smith*, 538 U.S. at 99. Publication of the registry information online to make the public aware is not akin to public shaming.

Turning to Doe's argument that the reporting requirements are similar to probation, the United States Supreme Court compared the Alaska sex offender registry to probation and found "[p]robation and supervised release entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction." *Id.* at 101. "By contrast, offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision." *Id.* Prior to the amendments Doe challenges, this Court found MO-SORA was distinguishable from traditional means of punishment because "registration has not traditionally been viewed as punishment" and "registration requirements do not physically confine or restrain the movement on a registrant." *Sanders*, 168 S.W.3d at 69. While MO-SORA may now require in-person reporting every 90 days and in-person reporting to make amendments to information on the registry, these amendments are not so significant as to physically confine or restrain the movement of Doe akin to traditional punishment, such as incarceration or probation.

13

This Court finds MO-SORA registration requirements are distinguishable from traditional notions of punishment.

### 2. *Traditional aims of punishment*

Turning to factor two, this Court must determine whether MO-SORA advances the traditional aims of punishment. This Court previously found MO-SORA serves two traditional aims of punishment, deterrence of future crimes and retribution for past crimes. *Id.* at 70. The version of MO-SORA this Court interpreted in *Sanders* did not divide registrants into categories based upon the severity of their offense and required all registrants to register for life unless the conviction was reversed, vacated, set aside, or pardoned. Section 589.400.3, RSMo 2000. This Court noted "[a] retributive scheme would impose progressively longer registration periods based upon the severity of the underlying sex offense." *Sanders,* 168 S.W.3d at 70. This Court also explained the mere presence of a deterrent effect does not establish registration constitutes a punishment because "any number of governmental programs might deter crime without imposing punishment." *Id.* (quoting *Smith,* 538 U.S. at 102).

The current version of MO-SORA requires lifetime registration from most registrants. *St. Louis Cnty. Police*, 659 S.W.3d at 904 (finding MO-SORA requires any offender that has registered under SORNA to register for life). Requiring lifetime registration from most registrants is similar to the statutory scheme requiring lifetime registration from all registrants this Court upheld in *Sanders*. Given most registrants are still required to register for their lifetime, this Court's analysis in *Sanders* stands.

14

Any registrant that has not registered federally would be placed into a category based on the severity of their offense under the current statute. Analyzing a scheme that classified offenders into a tier system based on their offenses, the United States Supreme Court noted, "broad categories … and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." *Smith,* 538 U.S. at 102. To the extent MO-SORA imposes longer registration requirements on registrants based on the severity of their offense, these requirements are reasonably related to the danger of recidivism. While MO-SORA may serve traditional aims of punishment, these aims are related to regulatory objectives.[6]

3. *Affirmative disability or restraint*

Next, this Court must determine whether MO-SORA imposes an affirmative disability or restraint on registrants. This Court has previously held there is no affirmative disability or restraint on a registrant even though they are required to provide "fingerprints, a photograph and written information concerning the offender and the

---

[6] Several circuits of the United States Court of Appeals have not placed much value in this factor, given that any sex offender statute will inevitably implicate the traditional aims of punishment. *See Doe v. Miller*, 405 F.3d 700, 720 (8th Cir. 2005) ("We observe, moreover, that the Supreme Court has cautioned that this factor not be over-emphasized…."); *Nelson v. Town of Paris,* 78 F.4th 389, 398-99 (7th Cir. 2023) ("As we—and many other courts—have noted, determining whether sex offender residency restrictions promote the traditional aims of punishment provides little value to the over-all *Smith* inquiry."); *Prynne v. Settle*, 848 F. App'x 93, 102 (4th Cir. 2021) (holding, for the factor to be given significant weight, an appellant must establish more than "the mere presence" of a traditional aim of punishment).

underlying offense" because registrants are "otherwise free to travel and go about [their] daily activities with no additional intrusion from governmental officials." *Sanders*, 168 S.W.3d at 70. Providing a DNA sample and reporting in person does not impede the ability of the registrant to travel or go about daily activities any more than previous requirements. *See Shaw v. Patton*, 823 F.3d 556, 568-69 (10th Cir. 2016) (finding in-person reporting requirements do not render a sex offender registry punitive). This Court sees no reason to depart from our previous analysis. MO-SORA is not an affirmative disability or restraint.

### 4. Rational connection to a non-punitive purpose

Factor four, MO-SORA's rational connection to a non-punitive purpose, is the most significant factor in determining whether the statute's effects are punitive. *Smith*, 538 U.S. at 102. This Court continues to find the registration requirements are rationally related to the purpose of public safety and protecting children from sex offenders. *See supra* Part I.

### 5. Excessiveness with respect to the purpose

Finally, this Court must determine whether MO-SORA is excessive in relation to its purpose. Doe contends MO-SORA is excessive because SORNA would allow him to seek removal from the registry,[7] but MO-SORA requires him to register for life. States are not required to adopt the exact same standards in their sex registry schemes as laid out in SORNA. *United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009) ("SORNA leaves

---

[7] Doe would be eligible to seek removal from SORNA after 25 years. 34 U.S.C. sec. 20915.

16

the intrastate sex offender registry to the states, and concentrates SORNA's regulation on a national coordinated system which identifies the interstate movement of sex offenders."). "The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103. "The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto* Clause." *Id*. at 104.

This Court found the previous version of MO-SORA was not excessive "given the assistance it provides law enforcement agencies in investigating future offenses" and because it does "not impose substantial physical or legal impediments upon a registrant's ability to conduct his or her daily affairs." *Sanders*, 168 S.W.3d at 70. This conclusion stands. MO-SORA is not excessive solely because SORNA registration requirements are different from those of MO-SORA. The legislature made reasonable categorical judgments to protect the public that are not excessive in nature.

*Weighing the five factors*

The most important factor, MO-SORA's rational connection to a non-punitive purpose, weighs towards finding MO-SORA complies with constitutional limitations on *ex post facto* laws. All other factors clearly weigh towards finding the registration requirements civil and regulatory in nature except factor two, the traditional aims of punishment. Given the lack of weight many circuits of the United States Court of Appeals give this factor and that the traditional aims of punishment advanced by MO-

17

SORA are related to its legitimate regulatory purposes, factor two still ultimately weighs towards the civil nature of the registration requirements.

Having weighed all factors, Doe has not clearly and undoubtedly demonstrated MO-SORA violates the prohibition on *ex post facto* laws. MO-SORA is reasonable in light of its non-punitive objectives.

## Conclusion

The circuit court's judgment is affirmed.

_____
KELLY C. BRONIEC, JUDGE

All concur.