**CITY OF KANSAS CITY, Respondent,**

v.

**McArthur TYSON, Appellant.**

**No. WD 64326.**

Missouri Court of Appeals,
Western District.

Sept. 6, 2005.

Donald P. Herron, Independence, for appellant.

Todd Darren Wilcher, Kansas City, for respondent.

PAUL M. SPINDEN, Judge.

A jury convicted McArthur Tyson of violating Kansas City Ordinance Section 80–212(10) by operating a demolition debris landfill in a Kansas City residential yard without a permit. We reverse the circuit court's judgment.

Tyson owned and operated TSC, Inc., a concrete construction business. After Tyson tried unsuccessfully to obtain a conditional use permit, his neighbors and a city inspector saw dump trucks with the TSC logo on their doors enter Tyson's land and dump asphalt, concrete, and dirt. City prosecutors filed an information against Tyson, charging him with unauthorized use of the premises in violation of the city code.

The Municipal Division of the Jackson County Circuit Court entered judgment against Tyson. Tyson then applied for a trial *de novo* in circuit court, which also entered judgment against him.

Tyson presents several grounds for appeal, but we reverse Tyson's conviction on the ground that the city did not make a *prima facie* case against him. Although this is a civil action involving violation of a municipal ordinance, it was *quasi*-criminal; hence, the city's burden was to prove beyond a reasonable doubt that Tyson had violated its ordinance. *City of Cape Girardeau v. Jones*, 725 S.W.2d 904, 907 (Mo. App.1987).

Kansas City ordinance Section 80–212(10)a requires citizens to obtain a conditional use permit before maintaining demolition debris landfills on their property. The ordinance defines a demolition debris landfill as "a place designated for the disposal of used building materials resulting from the demolition, site clearance or waste materials from the construction of buildings or structures." Section 80–212(10)a. The ordinance further defines

"used building materials" as "any and all material requiring disposal resulting from the demolition, site clearance or construction of buildings." Section 80–212(10)b.

■ The ordinance is ambiguous. It is beguiling in its declaration in Section 80–212(10)a, on the one hand, that a demolition debris landfill is "a place designated for used building materials resulting from the demolition ... of *buildings or structures* "[1] but, on the other hand, defining "used building materials" in Section 80–212(10)b as materials resulting from destruction of only "buildings" and not "structures." We suspect that this ambiguity may have resulted from a drafting error. Regardless, the rule of lenity requires that we construe ambiguities in penal statutes against the government "and in favor of persons on whom such penalties are sought to be imposed." *J.S. v. Beaird,* 28 S.W.3d 875, 877 (Mo. banc 2000). Construing the ordinance in this manner, we deem the city's burden to prove that Tyson dumped materials that came from the destruction, site clearance, or construction of buildings, as opposed to all structures.

Amy Buford, the city inspector who investigated this case, testified that the trucks that she saw dumping on Tyson's land were dumping dirt, concrete, and asphalt. Photographs of the debris showed only dirt and what appeared to be large chunks of asphalt or concrete. The city introduced no evidence that the debris came from the destruction, site clearance, or construction of buildings, as it was required to do. It was not enough to infer that the materials came from the construction or destruction of a structure—the city needed to establish that the debris came from buildings. This it failed to do.

Thus, we reverse the circuit court's judgment convicting Tyson of violating the city's ordinances.

PATRICIA BRECKENRIDGE, Judge, concurs.

JAMES M. SMART, JR., Presiding Judge, concurs in a separate opinion.

JAMES M. SMART, JR., Judge, concurring.

I concur in reversing the judgment of the trial court. I write separately because I believe there is an additional reason to reverse the judgment. Tyson's defense at trial was that the material deposited on his property was "clean fill." He was entitled to use clean fill in his own yard (pursuant to section 260.210.10(1)) unless prohibited by local ordinance. He argued that there was no local prohibition against the use of clean fill in his own yard for fill purposes so that he could install a swimming pool. He argues that the trial court erred in precluding him from asserting this defense.

"Clean fill," as defined by section 260.200(4) is "uncontaminated soil, rock, sand, gravel, concrete, asphaltic concrete, cinder blocks, brick, minimal amounts of wood and metal, and inert solids as approved by rule or policy of the department for fill, reclamation or other beneficial use." The same definition is provided in ordinance number 62–121. According to section 260.210.10(1), a person "engaged in an activity that produces clean fill may use such material for fill, reclamation or other beneficial purposes on his or her own property or on the property of another person with the permission of the owner of such property, provided that such use does not violate any state law or local ordinance or order."

The City says Tyson would have needed a conditional use permit to dump clean fill on his property for fill purposes. The

---

1. We added the emphasis.

City, however, fails to show the existence of an ordinance specifically limiting or prohibiting the use of clean fill in the City of Kansas City as authorized by section 260.210.10(1) of the state statutes. The City apparently believes such permit is required for clean fill on the assumption that clean fill is included within the definition of "used building material." However, the definition of "used building material" does not specifically refer to "clean fill" or make any reference to the state statute permitting "clean fill" use for certain purposes. I also agree with the majority that the definition of "used building material" does not include clean fill unless such clean fill has come from demolition of buildings.

Tyson wished to testify that he was attempting to use clean fill for the purpose of installing a swimming pool on his property. Through his business activities he generated the material he wished to deposit on his own property. The pictures and the testimony show that the material that he deposited was clean soil with chunks of asphalt or concrete. There is no evidence of any wood or metal or trash or any other form of debris. The pictures and the testimony, in short, were entirely consistent with his defense.

Without any showing by the City that the use of clean fill on one's own property was regulated by ordinance, Tyson should have been permitted to raise his proposed state-law defense to the "demolition landfill" charge. He should have been permitted to submit that defense pursuant to section 260.210.10(1). Because there was no evidence by the prosecution that the material deposited on his property was anything other than clean fill, and the pictures and testimony showed nothing other than clean fill, and because there was no evidence that Tyson was using the material for anything other than beneficial fill purposes on his property, Tyson was entitled to a judgment of acquittal at the close of the prosecution's case. I agree that the judgment must be reversed.