**STATE of Missouri, Respondent,**

v.

**Michael WADE, Appellant.**

State of Missouri, Appellant,

v.

**Jason Reece Peterson, Respondent.**

State of Missouri, Appellant,

v.

**Edwin Carey, Respondent.**

Nos. SC 92382, SC 92491, SC 92786.

Supreme Court of Missouri,
En Banc.

Argued and Submitted Sept. 3, 2013.

Decided Dec. 24, 2013.

Gary E. Brotherton, Legal Writes LLC, Columbia, for Michael Wade.

Scott C. Hamilton, Aull, Sherman, Worthington, Giorza and Hamilton LLC, Lexington, for Jason Reece Peterson.

S. Dean Price Jr., Springfield, for Edwin Carey.

Daniel N. McPherson, Attorney General's Office, Jefferson City.

ZEL M. FISCHER, Judge.

In this appeal Michael Wade, Jason Reece Peterson, and Edwin Carey each argue that article I, section 13 of the Missouri Constitution, which prohibits the passage of any law "retrospective in its operation," applies to criminal laws and, therefore, their charges under § 566.150,[1] are unconstitutional as applied to them. This Court recently held that the retrospective clause of article I, section 13 does not apply to criminal laws. These cases now require this Court to determine whether § 566.150 is a criminal law.

This Court concludes that § 566.150 is a criminal law. Therefore, the circuit courts erred in dismissing the charges against Peterson and Carey on the grounds that the statute was unconstitutionally retrospective as applied to them, but the circuit court correctly overruled Wade's motion to dismiss. The judgments entered against the State with respect to Peterson and Carey are reversed, and the cases are remanded. The judgment in Wade's case is affirmed.

## Factual and Procedural History

The facts are undisputed in each case. The cases are consolidated for opinion because they present the same legal question.

### State v. Wade

On November 25, 1996, Wade pleaded guilty to statutory sodomy in the first degree, § 566.062, child molestation in the second degree, § 566.068, and sexual abuse in the first degree, § 566.100. Wade was sentenced, pursuant to § 559.115, RSMo 1994, to participate in the Sexual Offender Assessment Unit program. Upon successful completion of the pro-

---

1. All statutory references are to RSMo Supp. 2010 unless otherwise indicated.

gram, the circuit court suspended the remainder of Wade's sentences and ordered him released on probation for a period of five years. Wade was a registered sex offender and in compliance with sex offender registration requirements.

On August 22, 2011, Wade was arrested at Castlewood State Park for violating § 566.150. Section 566.150 prohibits any individual who has pleaded guilty to, or been convicted of, or been found guilty of various sex offenses from "knowingly be[ing] present in or loiter[ing] within five hundred feet of any real property comprising any public park with playground equipment or a public swimming pool." Wade was charged with knowingly being present within 500 feet of a public park with playground equipment. Wade filed a motion to dismiss the indictment, claiming the statute was unconstitutionally retrospective as applied to him in violation of article I, section 13. The circuit court overruled the motion, and Wade waived his right to a jury trial. After a bench trial, Wade was convicted and sentenced to three years' imprisonment. The circuit court suspended execution of his sentence and placed Wade on probation for a period of five years. Wade appeals.

### State v. Peterson

On January 20, 1998, Peterson was convicted of the offense of indecent behavior with a juvenile in Louisiana. Peterson resides in Missouri and is in compliance with all sex offender registration requirements. On June 17, 2011, a grand jury issued an indictment charging Peterson with the crime of loitering within 500 feet of a public park in violation of § 566.150.

Peterson filed a motion to dismiss the charge against him as unconstitutionally retrospective in violation of article I, section 13. The State responded by arguing the retrospective ban contained in the constitution applied only to civil rights and proceedings, not to criminal proceedings, relying on the holding in *Ex parte Bethurum,* 66 Mo. 545 (1877), to support its position. The State also argued that if the retrospective ban applied to criminal statutes, the statute did not tread on any of Peterson's vested rights, nor did it confer any additional duty, obligation, or disability on Peterson to comply with the statute.

The circuit court sustained Peterson's motion to dismiss the indictment. The circuit court assumed the ban contained in article I, section 13 was not limited to civil statutes and found § 566.150 was an unconstitutionally retrospective law as applied to Peterson. The State appeals.

### State v. Carey

On May 7, 1997, Edwin Carey pleaded guilty to the offense of statutory rape in the second degree in violation of § 566.034, RSMo Supp.1997. Carey is in compliance with all sex offender registration requirements.

In 2010, the State filed an information charging Carey with the offense of loitering within 500 feet of a public park in violation of § 566.150. Carey filed a motion to dismiss the charge against him, alleging that § 566.150 is unconstitutionally retrospective as applied to him because it imposed a new obligation that was not present at the time of his conviction in violation of article I, section 13. Carey's motion alleged that § 566.150 became effective 12 years after his May 1997 guilty plea. The motion further alleged that laws similar to § 566.150 had been found unconstitutionally retrospective as applied to offenders convicted before the enactment of the law. The State responded to the motion by arguing that article I, section 13's prohibition against laws retrospective in their operation applied only to civil rights and remedies.

After a hearing, the circuit court sustained Carey's motion and dismissed the information. The State appeals.

Because these three cases involve the validity of a statute, this Court has exclusive appellate jurisdiction. Mo. Const. art. V, § 3.

### Standard of Review

 Whether a statute is constitutional is an issue of law that this Court reviews *de novo*. *State v. Honeycutt*, 421 S.W.3d 410, 414 (Mo. banc 2013). "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *Id.* "The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitutional limitations." *Id.*

### The Prohibition of Laws Retrospective in Their Operation Does Not Apply to Criminal Laws

██ The United States Constitution[2] and the constitutions of every state prohibit ex post facto laws. Only a handful of state constitutions prohibit the passage of laws retrospective in their operation.[3] The Missouri Constitution has included such a provision since 1820.[4] In the current constitution, article I, section 13 provides, "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted."

This Court recently held, in *State v. Honeycutt*, that the retrospective clause of article I, section 13 does not apply to criminal laws. 421 S.W.3d at 423–25. In *Honeycutt*, this Court reaffirmed the holding of *Bethurum* that the ex post facto clause and the clause prohibiting any law retrospective in its operation in article I, section 13 have separate and distinct legal meanings, whereby the ex post facto clause applies to determine the validity of criminal laws and the clause prohibiting any law retrospective in its operation applies to determine the validity of laws affecting civil rights and remedies. *Bethurum*, 66 Mo. at 552–53. For a complete textual and historical analysis of article I, section 13's prohibitions against any law retrospective in its operation and further rationale behind this Court's decision to reaffirm *Bethurum's* holding that the retrospective clause does not apply to criminal laws, see *Honeycutt*, 421 S.W.3d 410.

In the face of the long-standing technical legal meaning of these terms and *Bethu-*

---

**2.** U.S. Const. art. I, sec. 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."); U.S. Const. art. I, sec. 10, cl. 1 ("No state shall ... pass any ... ex post facto law....").

**3.** *See* Colo. Const. art. 11, sec. 11; Ga. Const. art. I, sec. 1, para. X; Ind. Const. art. XI, sec. 12; Md. Decl. of Rts., art. 17; N.H. Const. Part I, art. 23; Ohio Const. art. II, sec. 28; Tenn. Const. art. I, sec. 20; and Tex. Const. art. I, sec. 16.

**4.** *See* Mo. Const. art. XIII, sec. 17 (1820) ("That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed, nor can the person of a debtor be imprisoned for debt after he shall have surrendered his property for the benefit of his creditors in such manner as may be prescribed by law."); Mo. Const. art. I, sec. 28 (1865) ("That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed."); Mo. Const. art. II, sec. 15 (1875) ("That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly.").

*rum's* necessary and express holding, Wade, Peterson, and Carey argue that this Court implicitly overruled *Bethurum* in two recent cases: *R.L. v. Dep't of Corrections*, 245 S.W.3d 236 (Mo. banc 2008), and *F.R. v. St. Charles Cnty. Sheriffs Dep't*, 301 S.W.3d 56 (Mo. banc 2010). In *R.L.*, this Court held that a law prohibiting certain sex offenders from living within 1,000 feet of a school or child-care facility, as it was applied to that defendant, violated article I, section 13's prohibition of any law retrospective in its operation. *R.L.*, 245 S.W.3d at 237–38. In *F.R.*, this Court held that an amended version of the law at issue in *R.L.* and a law that imposed several restrictions on what certain sex offenders could do on Halloween were unconstitutionally retrospective in their operation as applied to those defendants. *F.R.*, 301 S.W.3d at 66. Each of the laws carried a criminal penalty for failure to comply with their provisions.[5] Wade, Peterson, and Carey essentially assert that these two cases overruled *Bethurum sub silentio* and extended the application of the prohibition against laws retrospective in their operation to criminal laws without discussion, analysis or citation. The dissent agrees with this Court's determination that *Bethurum* was not overruled by *R.L.* and *F.R.* Dissent op. at 442–43. In response to this same argument made in *Honeycutt*, this Court explained:

> Generally, this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled *sub silentio. See Badahman v. Catering St. Louis*, 395 S.W.3d 29, 37 n. 10 (Mo. banc 2013). *Sub silentio* is defined as "without notice being taken or without making a particular point of the matter in question." *Webster's Third New Inter-*

*national Dictionary* 2279 (1976). "If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio.*" *Keller v. Marion Cty. Ambulance Distr.*, 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting). This presumption can be traced, at least in part, to the doctrine of *stare decisis.* "The doctrine of *stare decisis*—to adhere to decided cases—promotes stability in the law by encouraging courts to adhere to precedents." *Med. Shoppe Int'l, Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 334–35 (Mo. banc 2005). Under the doctrine of *stare decisis*, decisions of this Court should not be lightly overruled, especially when "the opinion has remained unchanged for many years." *Sw. Bell Yellow Pages, Inc. v. Dir. Of Revenue*, 94 S.W.3d 388, 391 (Mo. banc 2002).

Importantly, "[t]he maxim of stare decisis applies only to decisions on points arising and decided in causes" and does not extend to mere implications from issues actually decided. *Broadwater v. Wabash R. Co.*, 212 Mo. 437, 110 S.W. 1084, 1086 (Mo.1908). To assert that a decision has been overruled *sub silentio* is the same as to assert that the decision has been overruled by implication. This Court's presumption against *sub silentio* holdings, therefore, is based not only on the general preference that precedent be adhered to and decisions be expressly overruled, but also because the implicit nature of a *sub silentio* holding has no *stare decisis* effect and is not binding on future decisions of this Court. *R.L.* and *F.R.* did not expressly address whether article I, section 13 applies to criminal

---

5. Violation of the residence restriction was a class D felony for the first violation and a class B felony for any subsequent violation. Violation of the Halloween restrictions was a class A misdemeanor.

laws, and this Court must presume those opinions made no decision on the issue.

In addition to the usual presumption against assuming a case was overruled *sub silentio*, a careful review of these cases demonstrates that this Court—without consideration—presumed the laws invalidated in *R.L.* and *F.R.* to be civil in nature. In *R.L.*, this Court stated, "The constitutional bar on retrospective *civil laws* has been a part of Missouri law since this State adopted its first constitution in 1820." 245 S.W.3d at 237 (emphasis added). The Court, without any briefing to suggest a contrary analysis, stated that "[t]he same long-standing principles applied in [ *Doe v.* ] *Phillips* apply in this case." *Id.* In *Doe v. Phillips,* this Court held that Missouri's sex offender registration requirement was civil in nature and operated retrospectively in violation of article I, section 13. 194 S.W.3d 833, 850 (Mo. banc 2006). Based on the issues raised and discussed on the briefs of the parties, *R.L.* held that the residency requirement at issue there retrospectively imposed a new civil obligation in violation of the constitution. *Id.* at 237–38.

Similarly, the opinion in *F.R.* (concerning residency requirements and various Halloween restrictions) begins with the statement, "These two cases are simply cases that can be resolved by applying article I, section 13 in the same way as it was applied in *Doe v. Phillips* and *R.L.*" 301 S.W.3d at 61. As already noted, in both of these cases the Court stated that it was applying article I, section 13 to a *civil law.* The issue concerning whether article I, section 13 applied to criminal laws was not briefed by the parties in *R.L.* and *F.R.*, and the Court made no formal analysis concerning the nature of the laws before it. . . .

While this Court is not critical of counsel for the defendant making the argument that *R.L.* and *F.R.* reversed *Bethurum sub silentio,* a fair reading of *R.L.* and *F.R.* demonstrates they do not hold that article I, section 13's prohibition against laws retrospective in their operation applies to criminal laws. Neither case made an express holding to that effect, and the language used and authorities cited in each case demonstrate that the Court presumed the particular laws invalidated were civil laws without consideration or analysis of the issue.

421 S.W.3d at 422–24.[6]

As discussed more fully in the next section, in addition to holding that the retrospective clause does not apply to criminal laws, *Honeycutt* also held that when a law is challenged under either the ex post facto or retrospective clause of article I, section 13, it is essential that the analysis begins with a determination of whether the law being challenged is a criminal law or law affecting civil rights and remedies. 421 S.W.3d at 424. To the extent that *R.L.* and *F.R.* conflict with *Honeycutt* due to their failure to perform any analysis to determine whether the statute being chal-

---

**6.** The dissent hypothesizes that because *R.L.* found it unnecessary to address the lower court's alternative finding that the law at issue was an ex post facto law, this Court should imply that the Court in *R.L.* "found the statute's effect to be civil rather than criminal, and therefore, affirmatively analyzed it as a retrospective, regulatory law." Dissent op. at 443. The problem with this line of logic is that it relies on speculation rather than the express words of this Court's opinion. As this Court made clear in *Honeycutt*—and as has already been set out here—this Court speaks through its written opinions, and only express holdings are to be given any *stare decisis* effect. Neither *F.R.* nor *R.L.*, even considered it a factor or analyzed whether the laws at issue were civil.

lenged was a criminal law, they no longer should be followed.[7]

### Section 566.150 is a Criminal Law

■ The question that this Court now must answer, and the dispositive one in this case, is whether § 566.150 is a criminal law. *Honeycutt* made clear that, when a law is challenged under either the ex post facto or retrospective clause of article I, section 13, it is essential that the analysis begins with a determination of whether the law under examination is civil or criminal. 421 S.W.3d at 424. Such a determination allows the evaluating court to apply the correct provision of the constitution to the law at issue.

To determine which provision of article I, section 13 the Court is required to apply, *Honeycutt* instructs that this Court utilize a two-part test for ascertaining whether a statute is criminal or civil in nature. *Id.* Pursuant to the test, the Court first will determine whether the legislature intended the statute to affect civil rights and remedies or criminal proceedings. *Id.* If the legislature intended to impose punishment, that ends the inquiry. *Id.* However, if the Court determines that the legislature intended the law to be civil, the Court then must determine whether the statutory scheme is so punitive in purpose or effect as to negate the intention to affect civil rights or remedies. *Id.* at 424–25. "Whether a statutory scheme is civil or criminal is first of all a question of statutory construction." *Id.* at 424 (internal quotation marks omitted). As stated in *Honeycutt,*

> The courts must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. An express legislative finding is one obvious indicator of legislative intent, but [o]ther formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are probative of the legislature's intent.
>
> If a statute is determined to create a civil regulatory scheme, the Court must then examine whether the civil scheme was so punitive either in purpose or effect as to negate [the State's] intention to deem it civil. To analyze the effects of the regulation, [this Court] examine[s] whether, in its necessary operation, the regulatory scheme: (1) has been regarded in our history and traditions as a punishment; (2) imposes an affirmative disability or restraint; (3) promotes the traditional aims of punishment; (4) has a rational connection to a nonpunitive purpose; or (5) is excessive with respect to that purpose.

*Id.* at 424–25 (citations and internal quotation marks omitted).[8]

---

7. The dissent questions why this Court does not completely overrule *R.L.* and *F.R.* To overrule *R.L.* and *F.R.* outright would require this Court to examine the laws at issue in those cases under the *Honeycutt* two-part test, which is fully outlined in the next section, and make a determination as to whether the laws are civil or criminal. As *Honeycutt* cautioned, "No case should be reversed unless the legally dispositive issue is necessary to the resolution of the pending case. To do otherwise could result in an under-informed or

under analyzed holding." *Honeycutt,* 421 S.W.3d at 423 n. 16.

8. This Court first applied this test in *R.W. v. Sanders* to determine whether Missouri's sex offender registration statute was criminal or civil. 168 S.W.3d 65 (Mo. banc 2005). In the first stage of the analysis, this Court found that the legislature had not clearly expressed its intention as to whether the statute was civil or criminal. *Id.* at 69. This Court found that some evidence demonstrated that the legislature intended the statute to be criminal, in

Pursuant to *Honeycutt*, this Court is required to ascertain whether the legislature meant the statute to establish a crime and punishment for that crime or affect civil rights and remedies. 421 S.W.3d at 425. The analysis begins with this Court's review of the statute's text and its structure to determine whether the General Assembly intended the law to affect civil rights and remedies or to be a criminal statute. *Id.*

Section 566.150 provides:

1. Any person who has pleaded guilty to, or been convicted of, or been found guilty of:

(1) Violating any of the provisions of this chapter or the provisions of subsection 2 of section 568.020, incest; section 568.045, endangering the welfare of a child in the first degree; subsection 2 of section 568.080, use of a child in a sexual performance; section 568.090, promoting a sexual performance by a child; section 573.023, sexual exploitation of a minor; section 573.025, promoting child pornog-

raphy; or section 573.040, furnishing pornographic material to minors; or

(2) Any offense in any other state or foreign country, or under federal, tribal, or military jurisdiction which, if committed in this state, would be a violation listed in this section; shall not knowingly be present in or loiter within five hundred feet of any real property comprising any public park with playground equipment or a public swimming pool.

2. The first violation of the provisions of this section shall be a class D felony.

3. A second or subsequent violation of this section shall be a class C felony.

Section 566.150 is part of the criminal code, appears on its face to be a criminal statute, and does not explicitly indicate that the purpose of the statute is to protect the public by alerting them to sex offenders in their area. The statute is not a part of a civil regulatory scheme. Section 566.150 is located in Title XXXVIII of the Revised Statutes of Missouri, titled "Crimes and Punishment; Peace Officers and Public Defenders." Chapter 566 is titled "Sexual Offenses."[9] Moreover, the

---

that it was codified in the "Crimes and Punishment" title of the revised statutes of Missouri. *Id.* The Court also noted that it had determined in a prior decision that the "obvious legislative intent for enacting [the sex offender registration statute] was to protect children from violence at the hands of sex offenders" and that such a purpose could be considered civil. *Id.* Because the legislature's intent was not fully apparent, the Court went on to the second stage of the examination to determine if the sex offender registration statutes were so punitive in effect as to constitute a retrospective punishment such that it would violate the ex post facto clause. *Id.*

The Court found that requiring registration as a sex offender: 1) did not fit our history as a punishment; 2) did not promote the traditional aims of punishment because it did not deter crime and was not retributive; 3) did not impose a significant affirmative disability because it only required a defendant to register; 4) served a legitimate non-puni-

tive purpose of "public safety;" and 5) was not excessive because of the grave concerns over recidivism of sex offenders. *Id.* at 69–70. The Court determined that Missouri's sex offender registration statute was not so punitive as to overcome the legislature's intention to create a civil regulatory scheme and was, therefore, civil in nature. *Id.* at 70.

9. The manner of the statute's codification is just one factor in the determination of whether a law is civil or criminal. This same factor was used in both *Honeycutt* and *R.W.* to help determine whether the statutes at issue in those cases were civil or criminal. While it is not dispositive, it may help shed light on the issue. Of course, the practical punitive effect of the statute has great weight in these situations, and should be examined, as it is here, in the determination of whether the legislature intended for the statute to be civil or criminal.

statute itself uses the language of a criminal provision, providing a requisite mental state for the offense—"shall not *knowingly* be present." It also prescribes the penalty for a violation; the first violation is a class D felony and any subsequent violation is a class C felony. Section 566.150 is written in the style of all other provisions of the criminal code, such as § 571.070,[10] which criminalizes the possession of a firearm by a convicted felon and which this Court held is a criminal statute.[11] *See Honeycutt*, 421 S.W.3d at 425–29.

Most significantly, § 566.150 does not depend on a sex offender's registration as a sex offender. In fact, § 566.150 does not reference the sex offender registration list. An offender is guilty of violating § 566.150 independently of any registration requirement.

In addition to these obvious considerations, § 566.150 carries a very severe punishment. The obvious purpose to punish is distinct from the purpose of registration, which as discussed in *R.W.*, is to protect public safety by giving the public and public agencies information about sex offenders. 168 S.W.3d at 69. "Registration is traditionally a government method of making available relevant information to law enforcement, not a method of punishment." *Id.*

The purpose of § 566.150 is not to provide the public with any information whatsoever, but to punish a person who was convicted of one of the enumerated sex offenses when that person knowingly loiters within 500 feet of, or is present in, a park with playground equipment or a swimming pool. The General Assembly intended for this statute to punish felons, who had been convicted of committing specific, enumerated crimes, for engaging in future conduct that the General Assembly determined should be prohibited. While this necessarily also has a positive impact on public safety—as do all criminal statutes—this impact is directly related to past criminal conduct independent of any civil regulatory scheme designed for the purpose of giving the public greater access to information concerning certain prior sex offenders. The rationale is no different from punishing any prior felon for possessing a firearm in the future.

Furthermore, even if the legislature had intended this statute to aid the sexual registration system—which it does not do in any practical manner—the statute is so punitive in effect as to negate that purpose. In the second part of the two-part analysis, this Court considers whether in its necessary operation, the regulatory scheme: 1) has been regarded in our history and traditions as a punishment; 2) promotes the traditional aims of punishment;

10. Section 571.070 provides:
 1. A person commits the crime of unlawful possession of a firearm if such person knowingly has any firearm in his or her possession and:
 (1) Such person has been convicted of a felony under the laws of this state, or of a crime under the laws of any state or of the United States which, if committed within this state, would be a felony; or
 (2) Such person is a fugitive from justice, is habitually in an intoxicated or drugged condition, or is currently adjudged mentally incompetent.

 2. Unlawful possession of a firearm is a class C felony.
 3. The provisions of subdivision (1) of subsection 1 of this section shall not apply to the possession of an antique firearm.

11. Despite the fact that § 571.070 and § 566.150 are nearly identical to one another, and despite the fact that each serves to impose an additional regulation on a person who has previously violated a criminal statute, not a single member of this Court, in *Honeycutt*, asserted that § 571.070 is a civil law.

3) imposes an affirmative disability or restraint; 4) has a rational connection to a non-punitive purpose; or 5) is excessive with respect to that purpose.[12]

Section 566.150 is the type of statute that has been regarded as punishment throughout our history. The statute seeks to punish conduct that necessarily occurs subsequently to the conviction of a prior offense. In that respect, it is very similar to the legislative prohibition of any felon— not necessarily dangerous felons—from possessing firearms.

This statute does not require registration, and it does not provide any information to the public. Section 566.150 is designed solely to criminalize future conduct. This Court in *R.W.* distinguished sex offender registration statutes from those that punish on the grounds that sex offender registration statutes make information publicly available and do not physically confine or restrain the movement of the registrant. 168 S.W.3d at 69. Neither of these characteristics describes § 566.150. The dissent asserts that § 566.150 should be considered as part of a comprehensive regulatory system in conjunction with the sex offender registration statutes. Of course this does not address the relevant inquiry which is whether the statute at issue is a criminal statute. There is a legally significant difference between the manner in which criminal laws and civil laws attempt to regulate. As has been stated, registration statutes regulate sex offenders by collecting information from anyone who is required to register and providing that information to law enforcement and the general public. This information, in theory, helps to make the public aware of potential dangers and may help law enforcement investigate incidents in a particular community or catch repeat offenders. Section 566.150, on the other hand, "regulates" in the same manner as all other criminal statutes, which is to punish someone for engaging in conduct that the General Assembly has prohibited. This is the same way that statutes that criminalize stealing "regulate" stealing.

Turning to the second factor, § 566.150 also promotes the traditional aims of punishment. "Two traditional aims of punishment are deterrence of future crimes and retribution for past crimes." *Id.* Section 566.150 serves both of these aims of punishment. It serves a deterrent effect in the same manner as other criminal statutes by making certain conduct punishable by imprisonment. It is retributive for much the same reason: engaging in prohibited future conduct is punishable by imprisonment. Moreover, a second violation of this statute is punished more severely than a first offense.

Turning to the third factor, § 566.150 imposes a direct and affirmative restraint on a certain class of defendants. It prohibits anyone who has violated one of the enumerated statutes from being present in or loitering around certain public parks. This is unlike a registration statute that requires only that the defendant register and does not prohibit or restrain particular future conduct.

**12.** Though the dissent states that *"R.W.'s* [two-step] approach is proper under this Court's jurisprudence, which requires the Court to look at a law's substantive effect rather than its nominal label[,]" the dissent does not engage in the second part of the analysis. Dissent op. at 444. In the second part of the test, the Court is required to determine whether the statute at issue is so punitive as to negate any intention of the legislature to deem it civil. While the dissent argues that the legislature intended § 566.150 as civil, it does not examine any of the factors involved in the second part of the analysis in order to refute this Court's holding that the effect of the statute is so punitive as to negate any legislative intention that the statute be deemed civil.

Turning to the fourth factor, the rational connection to a non-punitive purpose is more attenuated than it is with purely sex offender registration statutes. Unlike sex offender registration statutes, which provide the public with information, § 566.150 punishes future conduct. While ultimately it may deter certain sex offenders from going to certain parks and, in theory, make the parks safer, the predominant purpose of the statute is to punish or deter undesirable conduct. Every criminal statute is designed to deter certain undesirable conduct to make a safer environment for the general public. While § 566.150 may help protect the public, it does so in the same way as every other criminal statute.

Finally, § 566.150 is excessive with respect to any regulatory purpose. In *R.W.*, this Court found that purely sex offender registration statutes were not excessive because they provided aid to law enforcement when investigating future offenses and because registration statutes did not impose a substantial physical or legal impediment on a registrant's ability to conduct his or her legal affairs. *Id.* at 70. Section 566.150 does not aid in the investigation of future crimes. It creates a new crime for those with prior convictions for certain crimes based on certain future conduct. Section 566.150 is far more punitive than requiring a person with a prior sex crime conviction to register as a sex offender.

Properly analyzed pursuant to *Honeycutt*, § 566.150 is a criminal statute. As a criminal statute, § 566.150 is not subject to article I, section 13's prohibition against laws retrospective in their operation. No party in any of the consolidated cases raised an alternative argument that § 566.150 violates article I, section 13's prohibition of ex post facto laws.[13] " 'An issue that was never presented to or decided by the trial court is not preserved for appellate review.' " *State v. Davis*, 348 S.W.3d 768, 770 (Mo. banc 2011).

Because an appellate court is not a forum in which new points will be considered, but is merely a court of review to determine whether the rulings of the trial court, as there presented, were correct, a party seeking the correction of error must stand or fall on the record made in the trial court, thus it follows that only those objections or grounds of objection which were urged in the trial court, without change and without addition, will be considered on appeal.

*Id.* Absent plain error, this Court will not find that a lower court erred on an issue that was not put before it to decide. *Id.*

## Conclusion

As recently reaffirmed in *Honeycutt*, the retrospective clause of article I, section 13 does not apply to criminal laws. Because § 566.150 is a criminal statute, the circuit court erred in dismissing the charges against Peterson and Carey on the ground that the statute was unconstitutionally retrospective as applied to them, but correctly overruled Wade's motion to dismiss. The circuit courts' judgments are reversed,

---

**13.** Any ex post facto law challenge to § 566.150 would not have been successful. As this Court recently reaffirmed in *State v. Harris*, there is no ex post facto violation when a statute is applied to conduct completed after its enactment. 414 S.W.3d 447 (Mo. banc 2013). *Harris* upheld § 571.070, which makes it a crime for any felon to possess a firearm. This Court held that the statute at issue punished the actual possession of the firearm, which occurred after the enactment of the statute, and, therefore, did not violate the prohibition against ex post facto laws. Likewise, here, § 566.150 makes it a crime for certain prior felons to loiter near or be present in certain parks. As alleged in these cases, the conduct occurred after enactment of the statute, and there is no ex post facto violation.

and the cases are remanded with respect to Peterson and Carey. The judgment in Wade's case is affirmed.

RUSSELL, C.J., and BRECKENRIDGE, J., concur.

WILSON, J., concurs in separate opinion filed.

RUSSELL, C.J., and BRECKENRIDGE, J., concur in opinion of WILSON, J.

DRAPER, J., dissents in separate opinion filed.

STITH and TEITELMAN, JJ., concur in opinion of DRAPER, J.

PAUL C. WILSON, Judge.

I concur in the reasoning and conclusions in the majority opinion. I write separately, however, to express concern over the Court's increased willingness to draw inferences as to legislative intent from the codification (i.e., the structure and placement by title, chapter and section) of new provisions enacted by the General Assembly. Such inferences are of doubtful validity and should be indulged, if at all, only after careful analysis of the codification process and its effect on the language actually voted upon and approved by the legislature.

The majority opinion correctly states that it is solely a question of statutory construction whether a particular enactment is a criminal statute (and, therefore, is constrained only by the portion of article I, section 13 prohibiting *ex post facto* laws) or a statute affecting civil rights and remedies (and, therefore, is constrained only by the portion of article I, section 13 prohibiting laws that are retrospective in their operation). Maj. Op. at 434. In order to divine the General Assembly's intent on this question, the majority opinion states that the Court may explore various "for-mal attributes of a legislative enactment, such as the manner of its codification...." *Id.* (quoting *State v. Honeycutt*, 421 S.W.3d at 425).

As authority for the proposition that a statute's location and structure imposed during the codification process can have probative value on this question of statutory construction, the majority opinion cites to *R.W. v. Sanders*, 168 S.W.3d 65, 69 (Mo. banc 2005), in which this Court examined the effects of the codification process on a newly enacted statute in deciding whether that statute was—or was not—a criminal statute. Maj. Op. at 434 n. 8. Without conducting any analysis of the codification process or the question of whose intent (if anyone's) the changes wrought by that process reflect, the Court ultimately concluded in *R.W.* that the statute's codification in Title XXXVIII (titled "Crimes and Punishments") was *not* a reliable indicator of the General Assembly's true intent that the statutes were not criminal. *R.W.*, 168 S.W.3d at 69.

*R.W.*, *Honeycutt* and the majority opinion here suggest that the Court is increasingly and unquestioningly willing to draw critical inferences regarding the General Assembly's intent solely from the location within the Revised Statutes of Missouri that is assigned to a new statute during the codification process. Clear and correct precedent spanning nearly all of this Court's existence preclude such inferences regardless of whether the question before the Court is if the legislature intended a new enactment to be a criminal statute for purposes of article I, section 13, or any other question of statutory interpretation. The process that newly enacted language undergoes after it leaves the General Assembly and before it appears in the Revised Statutes precludes any reasonable reliance on placement or structure of a

new enactment, standing alone, as indicating anything at all about the General Assembly's intent regarding that language.

Article III, section 34 of the Missouri Constitution provides: "In the year 1949 and at least every ten years thereafter all general statute laws shall be revised, digested and promulgated as provided by law." This process is governed by Chapter 3 of the Revised Statutes of Missouri, including section 3.060, which provides:

> The [joint committee on legislative research], in preparing editions of the statutes and supplements or pocket parts thereto, shall not alter the sense, meaning, or effect of any legislative act; *but may renumber sections and parts of sections thereof, change the wording of headnotes, rearrange sections, change reference numbers or words to agree with renumbered chapters or sections,* substitute the word "chapter" for "act" or "article" and the like, substitute figures for written words and vice versa and change capitalization for the purpose of uniformity and correct manifest clerical or typographical errors.

[Emphasis added.]

The effect of this constitutional charge and its implementing legislation is that the *language* of a given enactment exclusively is the province of the General Assembly (with the Governor's approval or inaction), but *where* that language is codified in the revised statutes and the *structure* in which that language will be published is the province of the Joint Committee on Legislative Research created by Mo. Const. art. III, sec. 35, and the Revisor of Statutes acting under the Committee's supervision. § 3.070, RSMo 2000.

Until recently, this Court had a long and unblemished record of refusing to recognize any probative value in the codification or structure of legislative enactments on the question of statutory interpretation. The bold-faced headings (or "catch words") assigned to each title, chapter and individual section throughout the Revised Statutes are the work solely of this codification process and, therefore, shed no light whatsoever on the General Assembly's purposes or intent. *State ex rel. Agard v. Riederer,* 448 S.W.2d 577, 581 (Mo. banc 1969) (distinguishing such "titles" from the legislative title of the truly agreed and finally passed bill, which has considerable probative value on questions of legislative intent).

This Court also has recognized that the placement and structure of newly enacted language is no more probative of the legislature's intent than the bold-faced headings added to the Revised Statutes by the Committee and the Revisor. *See, e.g., In re Marshall,* 478 S.W.2d 1, 3 (Mo. banc 1972) (refusing to construe statute on the basis of the location and order of section numbers that were assigned in 1835 to an 1824 enactment and perpetuated thereafter in successive codifications); *Chicago, B. & Q.R. Co. v. N. Kansas City,* 367 S.W.2d 561, 563 (Mo.1963) (the "sense, meaning and effect of said statutes were not affected by such rearrangement" during the codification process in which enactments were reordered with new section numbers and restructured into sections and subsections).

In this case, the majority opinion's conclusion that section 566.150 is a criminal law for purpose of applying article I, section 13 plainly is correct. The support for that conclusion is overwhelming, as demonstrated throughout the majority opinion.[1] More importantly, the section num-

---

1. One significant indicator of the legislature's intent is the title of House Bill 62 (2009), which states that it is an act repealing various sections and enacting "in lieu thereof seventy-

ber assigned to this new enactment during the codification process sheds no meaningful light on the question of whether that enactment is (or is not) a criminal law. As a result, there is no need to conduct the type of careful examination of that codification process that should be necessary before leaving behind the Court's long-held skepticism of such a dubious indicator and assigning to the results of that process unwarranted probative value concerning the General Assembly's intent.

Accordingly, I concur in the reasoning and conclusions of the majority opinion but write to caution future advocates against assuming that, on questions of statutory interpretation, the Court reflexively will credit matters of placement and structure imposed on a legislative enactment during the codification process in order to divine the General Assembly's intent. The Court should not—and historically has not—drawn such inferences without a far more compelling case that the inferences are warranted than has been made here.[2]

GEORGE W. DRAPER III, Judge.

I respectfully dissent from the principal opinion in two respects. First, I question the extent to which this Court's holdings in *R.L.* and *F.R.* are valid after the issuance of this opinion. Second, while it may be codified in the criminal code, that is not

determinative where, as here, section 566.150's primary effect is regulatory. Therefore, I disagree that section 566.150 is a criminal law. Just as the United States Supreme Court held that sexual predator laws are primarily civil in nature, even though they require incarceration of those subject to their terms, so too I believe section 566.150 should be construed as a civil law and subject to retrospective, rather than *ex post facto,* examination under article I, section 13. Upon application of the retrospective analysis set forth in *R.L.* and *F.R.,* I would find section 566.150 is a law retrospective in its operation as applied to Wade, Peterson, and Carey. Accordingly, I would reverse the circuit court's judgment with respect to Wade and affirm the circuit courts' judgments with respect to Peterson and Carey.

### Validity of R.L. and F.R.

The principal opinion states that *Bethurum* has not been overruled *sub silentio* by this Court's later decisions in *R.L.* and *F.R.* I agree with this determination. However, the principal opinion goes on to state that this Court presumed, without consideration, that the regulatory sex offender laws invalidated in *R.L.* and *F.R.* were civil in nature and that the issue was not briefed or argued to suggest a contrary analysis.

---

four new sections *relating to crime, with penalty provisions* [.]" [Emphasis added.] Though the placement and structure assigned to a legislative enactment during the codification process cannot reasonably be attributed to the legislature for purposes of divining its intent, the title of the bill required by article III, section 23, of the constitution can and must be attributed solely to the General Assembly. *Agard,* 448 S.W.2d at 581.

2. For example, it should take more than a website printout, which does not even purport to be an authoritative record of what the General Assembly actually voted on, to support the argument that the section number

"566.150" was assigned to this new enactment by the General Assembly itself in House Bill 62 and not during the codification process. And, even if the legislature voted on and passed the assignment of that section number to this new criminal law as part of House Bill 62, I am loathe to infer anything from the ebb and flow of legislative practice on this point when it takes place in a constitutional and statutory context in which the placement and structure of new statutes in the Revised Statutes of Missouri is to be done by the Committee and the Revisor rather than by the General Assembly.

A superficial look at this Court's opinions in *R.L.* and *F.R.* might make it appear to some that this Court incorrectly analyzed the statutes at issue in *R.L.* and *F.R.* by treating them as civil and applying a retrospective analysis to statutes that, like the statutes at issue in the instant cases, were nominally labeled as sex offenses and carried criminal penalties rather than being statutes promulgated and enforced under the auspices of Missouri's sex offender registration law. This conclusion only results if one incorrectly presumes that only the laws requiring registration of sex offenders, and not laws otherwise intended to regulate their conduct, are civil. Such a narrow understanding of what constitutes a civil law is in error. Although *R.L.* did not address the lower court's *ex post facto* ruling, this Court stated it was "unnecessary to address the court's alternative findings" because the circuit court's retrospective analysis was proper. *R.L.*, 245 S.W.3d. at 238 n. 1. This demonstrates that the Court found the statute's effect to be civil rather than criminal, and therefore, affirmatively analyzed it as a retrospective, regulatory law. Likewise, this Court did not address the *ex post facto* or vagueness claims that were raised in the briefs on appeal in *F.R.* but analyzed the laws as regulatory in nature just as it had laws requiring registration. *F.R.*, 301 S.W.3d at 61 n. 9.

In other words, while the principal opinion relies heavily on the fact that the distinct and finely drawn argument of whether the retrospective clause of article I, section 13 applies to criminal laws presented here was not developed in *R.L.* or *F.R.*, this Court had an opportunity to resolve the issue in *R.L.* and *F.R.* because these arguments were presented in the alternative. Perhaps, instead of reading *R.L.* and *F.R.* to conclude this Court assumed, without due consideration, that the laws at issue were civil, as the principal opinion

surmises, it is equally reasonable to find this Court carefully considered the alternative *ex post facto* challenges raised and found the retrospective analysis was proper and dispositive of the issue on appeal.

The principal opinion goes on to state that, to the extent that *R.L.* and *F.R.* conflict with this Court's recent holding in *Honeycutt* due to their failure to perform any analysis to determine whether the statute being challenged was a criminal law, they no longer should be followed. It appears, therefore, that *R.L.* and *F.R.* have been overruled in part for failure to apply the *Smith* factors to determine whether a statute is criminal or civil, but the ultimate holdings in those cases remain valid. I agree the clearer and more precise analysis of this issue should include the application of the *Smith* factors at the outset. However, the principal opinion's conclusion that *R.L.* and *F.R.* still have validity in light of today's holding is perplexing and incongruous, especially when one considers that in the principal opinion's view, this Court failed to engage in the proper analysis, and if it were to apply the *Smith* factors, *R.L.* and *F.R.* ostensibly reached the wrong result given that the statutes at issue in those cases are substantially similar to section 566.150. This flawed reasoning leaves one wondering why the principal opinion failed to overrule both opinions in their entirety rather than permit them to stand as anomalies with questionable precedential value.

### Section 566.150 is a Civil Law

The principal opinion holds that section 566.150 is a criminal law after applying the *Smith* factors, as articulated in this Court's holding in *R.W.* I disagree. I believe this regulatory statute is part of the unique statutory scheme that has its genesis in the sex offender registrations statutes, which this Court has determined to

be, and which clearly are, civil in nature. The legislature exercised its police power to protect children from violence at the hands of sex offenders when enacting the sex offender registration statute and attendant statutes regulating the conduct of sex offenders who are required to register. *R.W.* recognized, "When a statute is 'an incident of the State's power to protect the health and safety of its citizens,' it will be considered as 'evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment.'" *R.W.*, 168 S.W.3d at 69 (quoting *Smith*, 538 U.S. at 93–94, 123 S.Ct. 1140).

*R.W.'s* approach is proper under this Court's jurisprudence, which requires the Court to look at a law's substantive effect rather than its nominal label. Here, while the laws are included with other criminal laws and provide criminal sanctions if they are violated, an examination of this Court's precedent addressing sex offender registration laws and the laws that regulate the registrants' conduct persuade me that section 566.150 is a civil law. In *Smith*, the United States Supreme Court upheld the Alaska sex offender registration statutes, commonly referred to as "Megan's Law," in the face of a challenge that they violated the *ex post facto* ban in the United States Constitution. *Smith*, 538 U.S. at 105–06, 123 S.Ct. 1140. The Court applied a number of factors to determine whether Alaska's legislature intended for the registration statute to impose punishment or enact a regulatory scheme that was civil and nonpunitive in nature. *Id.* at 92–105, 123 S.Ct. 1140. In a close decision, the Court ultimately held the Alaskan registration statutes were nonpunitive and their retroactive application did not violate the *ex post facto* clause, even though the failure to comply with the registration requirements imposed a criminal penalty. *Id.* at 105–06, 123 S.Ct. 1140.

In *R.W.*, this Court applied the *Smith* factors to a challenge raised by a convicted sex offender who filed a declaratory judgment action and injunctive relief to prevent enforcement of Missouri's Megan's Law. *R.W.*, 168 S.W.3d at 67. The offender made several arguments, including that the retrospective application of the statutes violated the constitutional ban against the enactment of *ex post facto* laws. *Id.* Although this Court found the registration statutes contained both punitive and regulatory attributes when applying the *Smith* factors, a weighing of the factors led to the conclusion that the thrust of the registration and notification requirements were civil and regulatory in nature. *Id.* at 70.

This Court reaffirmed *R.W.'s* rejection of the *ex post facto* challenge to the registration and notification requirements in *Phillips* "because Missouri's *ex post facto* clause applies only to criminal laws," while *R.W.* found the statutes were civil and regulatory in nature. *Phillips*, 194 S.W.3d at 842. The sex offenders who brought suit in *Phillips* raised several other challenges to the registration statutes, including whether the statutes were retrospective in their operation as to persons convicted or pleading guilty prior to its passage. *Id.* at 850. *Phillips* clarified that while *R.W.* stated the registration statutes operated retrospectively in that case, the statement was dicta because the question of whether the statutes were barred was not briefed and was not the foundation of the Court's holding in *R.W.* *Id.* This Court ultimately held that the statutes requiring registration as a sex offender for an offense that occurred prior to the statutes' effective date were invalid retrospective laws in violation of article I, section 13. *Id.* at 852. The Court found the registration requirements look solely at the offenders' past conduct and use that conduct to require the offenders to fulfill a new obligation and impose a new duty to

register and maintain their registration. *Id.*

In *R.L.*, this Court held section 566.147, which imposed residency restrictions on a registered sex offender who committed sex offenses before the statute's effective date, violated the constitutional prohibition against the enactment of retrospective laws. *R.L.*, 245 S.W.3d at 237–38. In order to violate section 566.147, one must have pleaded guilty or *nolo contendere* to, been convicted of, or found guilty of several enumerated sex offenses. While section 566.147 did not refer explicitly to the offender's registration status or the registration list directly, all of the enumerated sex offenses contained therein required compliance with Missouri's sex offender registration law. *Compare* section 566.147.1(1) and section 589.400.1(1) and (2). Therefore, one who has been convicted of any of the aforementioned enumerated sex offenses *must* register as a sex offender upon adjudication pursuant to section 589.400. *R.L.* relied heavily on the reasoning in *Phillips* that the statute constituted an invalid retrospective law in violation of article I, section 13. *Id.*

Similarly, in *F.R.*, this Court invalidated section 566.147, which imposed a school residency requirement prohibiting a registered sex offender from residing within 1,000 feet of any school or child-care facility, and section 589.426, which prohibited a convicted and registered sex offender from going outdoors, turning on outdoor lights, and handing out candy on Halloween, because they violated the constitutional pro-

hibition against the enactment of retrospective laws. *F.R.*, 301 S.W.3d at 66. Just as in *R.L.*, section 566.147 contained enumerated sex offenses as part of its enactment. The other statute at issue in *F.R.*, section 589.426, is codified with Missouri's sexual offender registration laws and explicitly prohibits "any person *required to register as a sexual offender under section 589.400 to 589.425*" from engaging in certain Halloween activities. (Emphasis added). This Court followed the same line of reasoning in *Phillips* and *R.L.*, stating, "These two cases are simple cases that can be resolved by applying article I, section 13 in the same way as it was applied in *Doe v. Phillips* and *R.L.*" *Id.* at 61.

Contrary to the principal opinion's suggestion otherwise, the fact that the laws at issue here are codified in the portion of the statutes governing criminal rather than civil laws does not call for a different result. The United States Supreme Court itself has so recognized in cases such as *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365–66, 104 S.Ct. 1099, 79 L.Ed.2d 361 (U.S.1984), which stated, "Congress may impose both a criminal and a civil sanction in respect to the same act or omission," and thus, the fact that an act resulted in criminal sanctions if violated was not dispositive where it had even broader regulatory effects. *Id.* "What overlap there is between the two sanctions is not sufficient to persuade us that the forfeiture proceeding may not legitimately be viewed as civil in nature." [1]

1. Similarly, although unpublished, in *State v. Jones*, the court noted that even though Ohio codified its sex offender registration laws as criminal, the court found them to be inherently civil in nature because they bore the attributes of a civil rather than criminal sanction. *State v. Jones*, 97 CA 42, 1998 WL 267914 (Ohio Ct.App. May 6, 1998) *aff'd*, 1998–Ohio–590, 84 Ohio St.3d 44, 701 N.E.2d 982

(1998). Other states, too, have found their laws limiting a sex offender's residence or employment to be civil, even if codified with criminal procedural laws. *See e.g., McAteer v. Riley*, 2:07–CV–692–WKW, 2008 WL 898932 (M.D.Ala. Mar. 31, 2008) ("Here, ACNA is codified in title 15, which contains criminal procedure law....[T]his title contains provisions regarding criminal administration,

Even Missouri's sexually violent predator laws have been found to be civil in nature. *Elliott v. State*, 215 S.W.3d 88, 93 (Mo. banc 2007). In *Holtcamp v. State*, 259 S.W.3d 537 (Mo. banc 2008), this Court described the purpose of the statutes governing sexually violent predators as follows:

> The sexually violent predator law does not impose punishment, but rather is rehabilitative. The sexually violent predators' confinement is for the purpose of holding the person until his mental abnormality no longer causes him to be a threat to others, and he is permitted to be released on a showing that he is no longer dangerous. The law seeks, above all else, the protection of society against a particularly noxious threat: sexually violent predators.

*Holtcamp*, 259 S.W.3d at 540 (internal citations omitted). The United States Supreme Court and Missouri precedent have recognized repeatedly the validity of the *civil* confinement of sexually violent predators who have restrictions imposed on them as a "legitimate nonpunitive governmental objective...." *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

Other examples of cases in which laws were found to be and were treated as civil even though their violation carries criminal penalties include *United Pharmacal Co. of Missouri, Inc. v. Missouri Bd. of Pharmacy*, 208 S.W.3d 907 (Mo. banc 2006). This Court applied the rule of lenity, which traditionally applies only to criminal statutes, when determining whether certain pharmacy regulations applied, finding, "The rule, however, is applicable where violation of a civil statute has penal consequences." *Id.* at 913.

In support, *United Pharmacal* cited *J.S. v. Beaird*, 28 S.W.3d 875, 877 (Mo. banc 2000), which like the instant case involved registration requirements. This Court held that the rule of lenity would apply because, "While the requirement of registration is not necessarily punitive, sections 589.400 to 589.425 penalize a failure to register as a class A misdemeanor and subsequent offenses as a class D felony." *Id.* at 877. *See also, City of Kansas City v. Tyson*, 169 S.W.3d 927, 928 (Mo.App. W.D.2005) (holding that "Although this is a civil action involving violation of a municipal ordinance [requiring a conditional use permit], it was quasi-criminal;" hence, the city bore the burden to prove an ordinance violation beyond a reasonable doubt).

Similarly, here, all of these statutes, including section 566.150, are designed to protect the public from harm and derive from offenders having been required to register, which has been deemed nonpunitive and civil in nature. *Smith* made it clear that although violations of these statutes may be labeled as criminal and carry criminal penalties, there are also rational connections to regulatory and non-punitive purposes, such as protecting the public from harm. *Smith*, 538 U.S. at 93, 123 S.Ct. 1140.[2] Even the dissent in *F.R.* rec-

---

which are not punitive. The codification of ACNA in the title on criminal procedure does not establish a punitive purpose. Because ACNA is a civil law, the court's analysis moves to whether ACNA is punitive in effect.").

2. *Smith* stated, "A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense. Whether other constitutional objections can be raised to a mandatory reporting requirement, and how those questions might be resolved, are concerns beyond the scope of this opinion. It suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints...." *Id.* at 102, 123 S.Ct. 1140.

ognized the legislature's valid exercise of police power to protect public safety and welfare, particularly the safety of children, in order to eliminate the close proximity between children and sex offenders, whether it be restricting residence near a school or daycare facility or preventing offenders from luring children on Halloween with candy. *See F.R.*, 301 S.W.3d at 67 (Russell, J., dissenting).

Section 566.150 contains identical language regarding enumerated sex offenses as the statute in *R.L.* and *F.R.* While it is true this statute does not require an offender to register, as noted by the principal opinion, section 566.150 only captures and burdens those individuals required to comply with Missouri sex offender registration laws in that all of the enumerated sex offenses contained in this statute require an offender to register. Thus, when applying this Court's most recent precedent addressing statutes that regulate sex offender conduct, I would find section 566.150 is a civil law and subject to retrospective examination under article I, section 13.

I would further hold that section 566.150 is a law retrospective in its operation as applied to Wade, Peterson, and Carey. A law is retrospective in its operation if it takes away or impairs vested or substantial rights acquired under existing laws or imposes new obligations, duties, or disabilities with respect to past transactions. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. banc 2007).

Here, section 566.150 clearly imposes a new obligation and duty on sex offenders to locate public parks and public swimming pools within the communities in which they reside, visit or pass through in Missouri. Moreover, an offender is tasked with additionally determining whether any business or other public place he or she wishes to patronize or residence he or she wishes to visit is within 500 feet of a public park with a playground or swimming pool to avoid violating the statute. Effectively, an offender is restricted from residing within 500 feet of a public park with a playground or swimming pool. The restrictions set forth in section 566.150 are remarkably similar to the restrictions this Court found unconstitutionally retrospective in *F.R.* Wade, Peterson, and Carey cannot avoid criminal liability by merely refraining from activities prohibited by the statute. Rather, they must perform some affirmative duty to first seek out, then avoid, and arguably monitor their location with respect to these restricted areas solely due to their prior convictions. This is in contrast to the offender in *Honeycutt*, who could avoid criminal liability under section 571.070 simply by refraining from the activities prohibited under the statute; specifically, not possessing a firearm.[3] Moreover, this conduct is broader than the conduct that results in a criminal conviction, and indeed must be undertaken in advance so as to avoid the conduct for which criminal sanctions are imposed. As

---

**3.** The principal opinion states in footnote 11 that these two statutes are "nearly identical to one another" and that it was not asserted in *Honeycutt* that section 571.070 was a civil law. These two statutes are only identical to the extent the legislature has drafted them in the same format as other criminal statutes. This means very little in the analysis, given that Missouri's Megan's Law, which is clearly civil, was drafted structurally by the legislature in the same manner. When examining their substance and regulatory effect, it is akin to comparing apples to oranges. As such, there was no need for any member of this Court to make the assertion that the statute in *Honeycutt* was a civil law. In *Honeycutt*, there was no dispute section 571.070 was anything other than a criminal law, but rather, the issue was whether the retrospective analysis applied to both civil and criminal laws.

such, I would find this statute unconstitutionally retrospective with respect to these three men only. I would not seek to invalidate the statute as a whole given its applicability to any number of sex offenders who have been required to register beyond the statute's effective date.

### Conclusion

I believe section 566.150 should be construed as a civil law and subject to retrospective, rather than *ex post facto,* examination under article I, section 13. Upon application of the retrospective analysis set forth in *R.L.* and *F.R.,* I would find section 566.150 is a law retrospective in its operation as applied to Wade, Peterson, and Carey. Thus, I would reverse the circuit court's judgment with respect to Wade and affirm the circuit courts' judgments with respect to Peterson and Carey.